99　263
100　433

# Richmond.

## Sands' Administrator v. Durham.

### March 14, 1901.

1. SUBROGATION—*When Doctrine Applicable.*—Subrogation is the creature of equity and essential justice is its object. It exists independently of the mere contractual relations of the parties, and, in its practical application, has been deemed broad enough to cover every instance in which one party has been required to pay a debt for which another is primarily answerable, and which, in equity and good conscience, ought to be discharged by the latter.

2. SUBROGATION—*Joint Obligors—Partners—Payment of Another's Share.*— Among joint obligors and partners each is primarily bound for his own share, and secondarily liable for the share of the other; and, although all are bound to the obligee, if one pays the share of another, all the essential conditions are present which entitle the former to be subrogated to the rights of the creditor against the latter.

3. SUBROGATION—*Partnership—Excessive Payments by One Partner—Settlement of Partnership Accounts.*—Where a partnership has been dissolved and the social assets exhausted, and judgments subsequently recovered against the members of the firm on partnership debts have been paid by one of the partners, who is not in arrears to the firm, out of his individual means, and this is shown by a settlement of the partnership accounts, the partner who has paid the judgments is entitled to be subrogated to the rights of the creditors whose judgments he has satisfied against the real estate of his co-partner, in the hands of a subsequent purchaser, to the extent to which his payments exceed his proportional part of the liability.

Appeal from a decree of the Circuit Court of Giles county, pronounced at its May term, 1899, in a suit in chancery, wherein the appellee was the complainant, and the appellants and others were the defendants.

*Affirmed.*

The facts of this case, so far as necessary to a clear under-standing of the opinion of the court, are as follows: On January 1, 1886, J. H. Durham, D. L. Whittaker and D. A. Early entered into a mercantile co-partnership, under the style of D. L. Whittaker & Co. D. L. Whittaker furnished a stock of goods valued at three thousand dollars. Durham and Early were to pay Whittaker interest on two-thirds of that amount, and each party was to share equally all profits and losses. On the dissolu-tion of the firm, Whittaker was to receive back his input of three thousand dollars, or so much thereof as had not been previously withdrawn by him. The business proved unprofitable, and, having contracted a large number of debts, the partnership was dissolved about August, 1887. The most of these debts were shortly thereafter reduced to judgments against the firm.

Before the dissolution of the firm, however, D. L. Whittaker had withdrawn from the firm the whole of his input of three thousand dollars. The assets of the firm, at the time of the dissolution, were comparatively of little value. They were placed in the hands of Durham, who was to collect and apply them to the partnership debts. Durham used the firm's assets to pay those debts as far as available. In addition to this, he paid out of his individual means a large number of the judgments against the firm, and also a large number of the firm's debts which had not yet been reduced to judgment. At the time that these judgments were recovered, D. A. Early, a member of the firm, owned a tract of 126 acres of land in Giles county, known as "the mountain tract," and five-eighths interest in three other tracts containing, respectively, eighty-one acres, nineteen acres, and forty-four acres. This five-eighths interest Early and wife conveyed to Ann Jane Sands, after the judgments aforesaid had been duly docketed.

In October, 1895, the present suit was brought by J. H. Dur-ham for the purpose of having a settlement of the partnership accounts of the firm of D. L. Whittaker & Co., and also of being

subrogated to the rights of creditors in the judgments aforesaid against the lands which had been aliened by Early. The bill sets forth the facts hereinbefore detailed, and especially the recovery of the judgments against the firm; the payment of those judgments by him out of his individual property; the deed aforesaid by Early and wife to Sands, and the further fact that D. L. Whittaker, the other member of the firm, was wholly insolvent. Both Early and Whittaker had died before the institution of this suit, but all persons necessary or proper were made parties defendants to the bill. The prayer of the bill, after making parties, is for the settlement of the partnership accounts of the firm of D. L. Whittaker & Co., and, if upon such settlement it should appear that Durham had paid off more than his part of the said judgments, then, to the extent that he had paid on said judgments sums that should have been paid by Early, that he be subrogated to the rights of the creditors whose judgments he had thus paid off, and that " said rights and liens be enforced against the said interest owned by the said D. A. Early in the lands hereinbefore referred to at the time of and after the rendition and docketing of said judgments." The case was referred to a commissioner to settle the partnership accounts, and the standing of each member with the firm. The commissioner reported that the firm was indebted to Durham in the sum of $3,732.87, not including interest, of which $3,028.20 was for judgments against the firm paid off by him. He also reported that D. L. Whittaker and D. A. Early were each indebted to the firm. Exceptions were filed to this report by the complainants and others, but were overruled by the court. The court decided that the appellee, Durham, was entitled to be substituted to the lien of the various creditors mentioned in the decree whose judgments against the firm were recovered and docketed prior to the recordation of the deed from D. A. Early and wife to Ann Jane Sands, to the extent that he had paid in excess of his share of

the liabilities of the firm. From that decree this appeal was taken.

*J. C. Wysor,* for the appellants.

*Henson & Mason* and *S. W. Williams,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

An opinion was handed down in this case in June, 1900 (98 Va. 392), but, this court not being satisfied with the conclusion then reached, a rehearing was granted.

There is but this single question presented for decision: Where a partnership has been dissolved, and the social assets exhausted, and judgments subsequently recovered against the members of the firm on partnership debts have been paid by one of the partners, who is not in arrears to the firm, out of his individual means, and this is shown by a settlement of the partnership accounts, is the partner who has paid the judgments entitled to be subrogated to the rights of the creditors whose judgments he has satisfied against the real estate of his co-partner, in the hands of a subsequent purchaser, to the extent to which his payments exceed his proportional part of the liability?

The doctrine of subrogation is independent of any mere contractual relations existing between the parties to be affected by it, and involves the equitable principle that where one who is secondarily liable has paid the debt of another, who is primarily liable therefor, he will, in equity, be substituted to all the rights and remedies of the creditor against the party whose share of the joint liability he has been compelled to discharge. Sheldon, in his work on Subrogation, states the doctrine thus: " The usual rule is that one of several joint debtors will, as against his co-debtors, ordinarily be subrogated to the securities and means of payment of the common creditor whom he has satisfied, so as to enable him to recover from his co-debtors, by

means thereof, their proportional shares of the indebtedness which he has discharged; and this, as in other cases of subrogation, arises rather from natural justice than from contract. Each joint debtor is regarded as a principal debtor for that part of the debt which he ought to pay, and as surety for his co-debtors as to the part of the debt which ought to be discharged by them." Sheldon on Subrogation, sec. 169, citing *Morrow* v. *Peyton,* 8 Leigh, 54; *Boyd* v. *Boyd,* 3 Gratt. 113.

Subrogation has been denominated as one of the benevolences of the law, created, fostered, and enforced in the interest and for the promotion of justice.

In England, and in a few of the States of the Union which have adopted the English rule, the application of the doctrine is very much restricted. Indeed, prior to an act of Parliament (19 and 20 Vict. C. 97) the courts had held that even a surety who satisfied a judgment against himself and his principal was not entitled to be subrogated to the rights of the creditor, and to have the judgment kept alive for his benefit (*Copis* v. *Middleton,* 1 T. & R. 229; *Hudgson* v. *Shaw,* 3 My. & K. 190), but by the act of Parliament aforesaid the doctrine was extended to sureties.

With the exception of the courts of Alabama, Vermont and North Carolina, the English rule has not been followed in this country.

In most of the other States it has been extended until, in its practical application, it has been deemed broad enough to cover every instance in which one party has been required to pay a debt, for which another is primarily answerable, and which in equity and good conscience ought to be discharged by the latter.

In no other jurisdiction has the doctrine been more firmly adhered to or more liberally expounded and applied, to meet the exigencies of particular cases, than in Virginia.

In *Powell* v. *White,* 11 Leigh, 309, this court expressly repudiated the doctrine of *Copis* v. *Middleton, supra,* and *Jones* v. *Davids,* 4 Russ. 277. In a review of these cases found in a note

to *Dering* v. *Earl of Winchelsea*, 1 L. C. in Eq., pt. 1, 140, it was remarked: " In the more recent case of *Powell* v. *White*, 11 Leigh, 309, the decisions in *Copis* v. *Middleton* and *Jones* v. *Davids*, were thoroughly examined in the Court of Appeals, and the Virginia practice was vindicated against the authority of Lord Eldon, with distinguished and convincing ability."

This court said, in *Enders* v. *Brune*, 4 Ran. 447: " It has nothing of form, nothing of technicality, about it; and he who in administering it would stick in the letter, forgets the end of its creation, and perverts the spirit which gave it birth. It is the creature of equity, and real essential justice is its object."

In *Tompkins* v. *Mitchell*, 2 Rand. 428, it was enforced in behalf of the principal debtor against a co-debtor, where the former had paid more than his proportion of the debt, by substituting him to the rights of the creditor whose vendor's lien he had discharged, the court holding that, as between themselves, each was a principal debtor for his one-half of the debt; and the one paying more than one-half was surety as to the excess paid by him.

In *Wheatley* v. *Calhoun*, 12 Leigh, 264, the parties were partners. The original debt was a joint obligation, but not a partnership debt. Subsequently the firm made its notes therefor and secured them by a lien on the property for which the debt was created. Afterwards one of the partners paid the entire debt, and he was subrogated to the lien of the creditor whose debt he had satisfied.

In *Gatewood* v. *Gatewood*, 75 Va. 415, it was declared that subrogation would be enforced in favor of sureties *and others* who are required to pay in order to protect *their own interest*.

In *Dobyns* v. *Rawley*, 76 Va. 537, the consideration of real estate sold and conveyed by Fulton to Rawley and Davis jointly, was $5,000, for the payment of which they executed their joint bonds. In a subsequent division of the land between the purchasers, Rawley's parcel was rated at $3,000 and Davis' at $2,400, and in this proportion they were to discharge their joint

indebtedness to Fulton. It was held that the legal effect of the arrangement was that, as between the two purchasers and in relation to each other, they were principal debtors for their respective portions of the purchase money, and each was surety for the other's portion, and that, if either paid more than his agreed share, he became entitled to all the rights and remedies of a surety—to subrogation among the rest—against the other for repayment of such excess.

This principle was recognized in *Horton* v. *Bond*, 28 Gratt. 825, as the true ground for substitution to enforce contribution among co-sureties. It was there said: " Sureties are not only sureties for the principal debtor for the whole debt; but, as amongst themselves, each is surety for the other to the extent of the excess of the whole debt beyond his proportionate part thereof."

In *Pace* v. *Pace*, 95 Va. 792, it was held that the liabilities of a decedent's estate, and the rights of his creditors, are fixed by his death. If at that time a creditor has the right to prove a debt against a decedent's estate for which the decedent and another are bound as sureties, and subsequently the co-surety pays the debt, he is substituted to the right of the creditor, and may prove the whole debt against the estate of the decedent, and receive dividends thereon until one-half of the debt is paid, although the estate of the decedent will not pay his debts in full.

*Buchanan* v. *Clark*, 10 Gratt. 164, is relied on as sustaining the contention that subrogation does not obtain amongst partners. The facts of that case are as follows: K, B and G, who had formed a partnership for the purchase and sale of cattle, executed a joint bond to C. Cattle were sold, and G was supplied with money arising from the sales for the purpose of paying the bond to C and all other partnership debts. It was agreed that G should be the principal, and K and B sureties only, for said debts. The bond was not paid, and C recovered judgment thereon against K, B and G. G was insolvent, and K and B

satisfied the judgment. Subsequently to the recovery of said
judgment G sold certain real estate; and K and B filed a bill in
equity against G and his alienees, setting forth the foregoing
facts, and praying that they might be subrogated to the rights of
C under the judgment. The court held that it was competent
for K, B and G to contract that, as between themselves, G should
be principal and K and B his sureties; that as between them-
selves K and B were entitled to be subrogated to the lien of the
judgment creditor; and that they were equally entitled against
the purchasers from G, who did not show a better equity. The
court said: " I do not think, therefore, that there is anything in
the objection that the debt when contracted was a partnership
debt, and that with respect to the creditor it retained its original
character. As between themselves they occupied the relation
of principal and sureties."

It will be observed, the court was dealing with a case of " Con-
vention Subrogation," and confined its decision to the case in
hand without intimation as to whether *the general doctrine of
subrogation* would or would not obtain among partners.

Bispham's Principles of Equity is also relied on to show that
the doctrine does not apply to partners, and that author says (at
section 337): " The right will not, however, exist between parties
who are equally bound—as, for example, co-partners, co-obligors
and co-contractors, except, of course, by virtue of special con-
tract."

His statement is general, is not confined to co-partners, but
embraces all co-contractors. And, as has been seen from the
authorities reviewed, it is not, without qualification, a correct
exposition of the Virginia doctrine. Of course, so long as such
parties remain *equally bound*, the right does not attach; but they
cease to *be equally bound* when one obligor discharges an obliga-
tion resting upon himself and his co-obligor. Both are bound to
the obligee; but *inter se*, each is primarily, *not equally liable,·*
for his own share, and secondarily liable for the share of the

other; and when he pays the share of such other, all the conditions essential for the application of the doctrine arise.

In *Baily* v. *Brownfield*, 8 Harris (Pa.) 41, cited to sustain the text, there is an *obiter* to the effect that a partner who has paid a partnership debt cannot be substituted to the creditor's rights. But in that case there had been no settlement of partnership accounts; and there was nothing to show that the partner asserting the right of subrogation had paid more than his share. It was, therefore, properly denied.

In the later case of *Fessler* v. *Hickernell*, 82 Pa. St. 150, subrogation was denied one partner against another, for the reason that until there had been a settlement of partnership accounts there was no means of ascertaining whether any, and if any, what balance was due to the partner demanding subrogation. But the right of a partner, who had been shown by a settlement of partnership accounts to have paid more than his share, was conceded in that case.

In the still more recent case of *Akerman's Appeal*, 106 Pa. St. 1, subrogation was allowed between principal debtors, the court holding that they were principals, so far as their creditor was concerned; but each was surety as to the share of the other.

Thus it appears, that the Pennsylvania cases do not sustain the general proposition laid down by Bispham; but are in accord with the decisions of this court.

In *Sells* v. *Hubbell*, 2 Johnson's Chy. 394, Chancellor Kent said: " The debt of Sells was the debt of the co-partnership of Bedient & Hubbell. It was the common equal debt of both partners, and the consideration for which it was created is presumed to have inured equally to the benefit of both, and the contribution ought to be equal. The estate of each partner ought to be charged with the debt in equal portions, provided their interests in the co-partnership were equal, and their accounts as between each other were equal. This is the intendment, in the first instance; and it would be a thing almost of course for equity to

allow the representatives of a deceased partner who had to pay the whole debt to·be substituted in the place of the creditor, in order to recover, from the surviving partner, or his estate, *a moiety* of what they had paid. Nothing could stay this proceeding but the allegation of the surviving partner that he was the creditor partner, and that the estate of the deceased partner owed him a balance as much or more than it had been obliged to pay. This would render it necessary to take and state an account between the partners, before this court could interfere, in any way, to enforce the claim for contribution."

In the case under consideration, the partnership had been dissolved, the social assets had been exhausted in the payment of partnership debts, and a settlement of the partnership accounts had been made, from which it appeared that the appellee, J. H. Durham, was in advance to the firm, and, with his individual means had paid the judgments against it. Under these circumstances, the Circuit Court was of opinion, and decreed, that appellee was entitled to be subrogated to the rights of the judgment creditors, whose liens he had discharged; and to subject the real estate owned by his co-partner, D. A. Early, at the date of the recovery and docketing of said judgments, to their satisfaction.

This court is of opinion there is no error in said decree, and that it ought to be affirmed.

*Affirmed.*