## BOARD OF SUPERVISORS OF FAIRFAX COUNTY

### V.

## SOUTHERN CROSS COAL CORPORATION, ET AL.

Record No. 870721

June 9, 1989

Present: All the Justices

*A. Robert Cherin, Senior Assistant County Attorney (David T. Stitt, County Attorney,* on briefs), on appellant.

*Robert W. Wooldridge, Jr. (McGuire, Woods, Battle & Boothe,* on brief), for appellees Republic Insurance Company.

No argument or brief for appellees Southern Cross Coal Company and Ronald Eugene Adkins.

Justice Russell delivered the opinion of the Court.

This is a dispute between the obligee and the surety on a developer's subdivision performance bond. The dispositive question is whether the obligee, completing the work after the principal had defaulted, materially altered the obligation so as to release the surety.

In October 1978, Southern Cross Coal Corporation (Southern Cross) entered into two agreements with the Board of Supervisors of Fairfax County (the Board) relating to the development of a land subdivision known as "North Springfield Park, Section II." The agreements obligated Southern Cross to complete all road improvements shown on the subdivision plans within 36 months, and to comply with all requirements of the Virginia Department of Highways and Transportation (VDH&T) in order that the subdivision streets would be accepted by VDH&T for maintenance.

Southern Cross and its President, Ronald E. Adkins, as co-principals, also entered into two performance bonds, in the amounts of $233,928 and $246,782, respectively, in each of which Republic Insurance Company (the Surety) joined as a compensated surety. The bonds, given to the Board as obligee, bound the principals and the Surety to performance of the subdivision agreements. The bonds expressly provided that the surety waived any right it might have to "review and approve any revisions to the plans, profiles and specifications."

During construction of the subdivision streets, Southern Cross found conditions on the site which necessitated some revisions of the plans. These were submitted to and approved by County officials. Southern Cross failed to complete construction by the agreed-upon October 1981 deadline. The Board, the co-principals, and the Surety, thereafter negotiated and executed a series of agreements extending the deadline for completion to October 1983, and ultimately to October 1984. In these agreements, the co-principals and the Surety promised that if the "case is tried . . . they will not contest liability on the Agreements or Bonds and will present no defenses thereto and that the only issue for trial is the amount of damages."

Southern Cross again defaulted; the street improvements were not completed by October 1984 to VDH&T standards. A VDH&T engineer noted "deficiencies . . . in virtually every component of the roadway structure," and it was discovered that Southern Cross had paved over the deficient substructures with asphalt. The County considered several alternatives for correcting the deficiencies. These included tearing up the road surface Southern Cross had laid and reconstructing the streets according to the original plans, or alternatively, correcting compaction and subgrade conditions where needed and adding additional gravel and asphalt. The County decided upon the least expensive alternative, engaged a private contractor to do the work, expended $184,747 to complete the improvements to VDH&T standards, and brought this action against the co-principals and the Surety to recover under the bonds.

The case was tried to a jury in September 1986. After the Board presented its evidence, the Surety moved to strike, arguing that the Board had completed the street work in a way which departed from the original plans, constituting a material change in the obligation which released the Surety from liability. The court reserved judgment on the motion. After Southern Cross had presented its evidence, the Surety, which had presented no evidence at any stage of the trial, moved for a "directed verdict" against the Board. The court granted the motion, and entered a "directed verdict"* discharging the Surety from the case. The issues between the Board and the co-principals on the bond were submitted to the jury. The jury returned a verdict in the Board's favor in the amount of $160,877.83, on which the court entered judgment. We refused a petition for appeal filed by Southern Cross and Adkins, and the judgment is final as to them. We granted the Board an appeal on its petition which questions the correctness of the trial court's ruling releasing the Surety.

Accommodation sureties are entitled to the benefit of the *strictissimi juris* rule: they are discharged by *any* change in the obligation underlying the bond. That rule does not apply, however, to compensated sureties. They must show a *material* variation in the bonded obligation before they are discharged. "Sureties for hire . . . must abide by their contracts and pay everything which

---

* Directed verdicts are not permitted in Virginia. Code § 8.01-378. *Kesler* v. *Allen*, 233 Va. 130, 133, 353 S.E.2d 777, 779 (1987).

by fair intendment can be charged against them. They act, not to accommodate others, but to promote their own interests, and are to be judged accordingly." *Southwood Builders, Inc.* v. *Peerless Ins.*, 235 Va. 164, 168-69, 366 S.E.2d 104, 107 (1988) (quoting *C.S. Luck & Sons* v. *Boatwright*, 157 Va. 490, 494-95, 162 S.E. 53, 54 (1932)). It follows from that rule that after the obligee has made out a *prima facie* case on the issue of liability, the burden is upon a compensated surety to go forward with evidence on the affirmative defense of showing a material variation in the bonded obligation.

The Surety makes no contention that the Board and Southern Cross, prior to Southern Cross' default, entered into any unauthorized material change in the obligation. Rather, the Surety contends that the Board, when taking over the completion of the streets after Southern Cross had defaulted and abandoned the work, completed them in a manner different from that prescribed by the original plans. In these circumstances, the Board made out a *prima facie* case against the Surety on the issue of liability by showing (1) that the performance bonds were properly executed, (2) that the principals had failed to meet their bonded obligations, and (3) that proper notice of default and demand for payment had been given to the Surety. *See Bd. of Sup.* v. *Safeco*, 226 Va. 329, 335, 310 S.E.2d 445, 448 (1983).

The Surety failed to offer proof of conduct on the part of the Board which would have precluded recovery. That would have been an affirmative defense, upon which the Surety would have had the burden of producing evidence, unless that defense was made out by the Board's own evidence. *See id.* In our view, whether an alleged material variation occurs before or after the principal's default, a compensated surety has the burden of showing it by a preponderance of the evidence.

Here, the Surety offered no evidence and relies entirely upon the evidence adduced by the other parties to show a material variation. That evidence, viewed in the light most favorable to the prevailing party, and shorn of immaterial detail, showed only that the underlying obligation had been to finish the streets to VDH&T specifications; that the principals had failed to do so; that the Board, confronted with several alternative plans for rectifying the defects, chose the least expensive alternative; that this alternative resulted in successful completion of streets to VDH&T specifications; and that the resulting cost to the Board was less

than the face amount of the bonds. We conclude that the forego-
ing evidence failed, as a matter of law, to carry the surety's bur-
den of showing a material variation in the underlying obligation.

 Where a surety's liability for the principal's obligation has
been established, the surety is liable for the whole debt. *Sands* v.
*Durham*, 99 Va. 263, 269, 38 S.E. 145, 146 (1901). The surety's
liability to the obligee is measured by that of the principal; the
liability of both is primary. *Manson* v. *Rawlings*, 112 Va. 384,
388, 71 S.E. 564, 566 (1911). Moreover, a surety, defending an
obligee's suit on the principal's bonded obligation, stands in the
principal's shoes and may assert only those defenses available to
the principal. *Safeco*, 226 Va. at 337-38, 310 S.E.2d at 450. Be-
cause principal and surety are in privity, the defenses available to
both may be asserted by either.

 Here, the Surety chose to rely on the defenses asserted
by the principals at trial. The evidence was in substantial conflict
as to the amount necessary to complete the work. Although the
jury awarded less than the Board claimed, it resolved that conflict
substantially in the Board's favor. Because the Surety failed to
carry its burden of producing evidence to show that the work
could have been completed for a lesser amount, it is bound by the
result. Thus, the jury's verdict against the principals is the mea-
sure of the damages to which the Board is entitled from the
Surety.

There being sufficient facts in the record to enable us to attain
the ends of justice, Code § 8.01-681, we will reverse the judgment
of the trial court insofar as it released the Surety, and enter final
judgment here in the Board's favor against the Surety in the
amount fixed by the jury's verdict.

*Reversed and final judgment.*