Present:  All the Justices

RIVER ROAD SHOPPING CENTER, INC.

v.  Record No. 990225     OPINION BY JUSTICE ELIZABETH B. LACY
                                        January 14, 2000
GEORGE ROSS SCOTT, INDIVIDUALLY
AND TRADING AS OUTDOOR TRADERS
OF VIRGINIA, INC., ET AL.

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Joseph F. Spinella, Judge Designate

River Road Shopping Center, Inc. (RRSC) appeals a

judgment holding that it was not entitled to recover damages

from sureties on a lease because it did not mitigate its

damages.  Finding that the lease terms bound the sureties and

allowed the damages sought by RRSC, we will reverse the

judgment of the trial court.

RRSC owns and operates a retail shopping center in

Richmond.  On January 21, 1988, RRSC executed a ten-year lease

with Outdoor Traders of Virginia, Inc. (Outdoor Traders) for

retail space in the center.  George and Nancy Scott were the

sole officers, directors, and shareholders of Outdoor Traders.

The Scotts individually joined in the lease as sureties.[1]

In June 1990, the Scotts decided to terminate their

retail business in the leased premises and contacted RRSC for

assistance in finding a sub-tenant for the space.  In December

---

[1] The lease refers to "Guaranty" and the motion for
judgment stated that the Scotts "guaranteed" the obligation of

1990, Outdoor Traders assigned the lease to Lavelle-Martin, Inc. In the assignment of the lease, the Scotts reaffirmed their responsibility as "Guarantors of Assignor." RRSC consented to the assignment on the condition that the Scotts as "Guarantors" under the lease "remain fully liable as if this Assignment of Lease had never been executed, throughout the initial term thereof."

Lauralee Lavelle-Martin and Kissel Martin, husband and wife, owned Lavelle-Martin, Inc. and began operating a children's clothing store in the leased space. Lavelle-Martin, Inc. was delinquent in rent payments in 1994 and early 1995. Delinquency notices were sent to Lavelle-Martin, Inc. The Scotts were also notified of the delinquencies. In June 1995, Mr. Martin caused a sheriff's levy to be conducted on the leased premises to recover a money judgment he had obtained against the corporation. Lavelle-Martin, Inc. ceased business operations and stopped making rent payments. RRSC did not notify the Scotts of Lavelle-Martin, Inc.'s default.

Mr. Martin offered to re-lease the premises from RRSC under the same terms as those contained in Lavelle-Martin, Inc.'s defaulted lease, but RRSC rejected this offer. RRSC executed a new lease with Jack Kreuter Jewelers, Inc.

Outdoor Traders. However, at trial the Scotts asserted and RRSC agreed that the Scotts were sureties, not guarantors.

2

Although based on the prevailing commercial real estate rental rates, the lease payments under the new lease were lower than the payments under the defaulted lease.

Based on Article XII of the defaulted lease, RRSC filed a motion for judgment against the Scotts to recover approximately $64,000, which represented the difference between the rent due under the defaulted lease and the rent received under the Kreuter lease.  RRSC also sought reasonable attorneys' fees and interest.  In their grounds of defense, the Scotts admitted that they were sureties on the defaulted lease, but denied any liability to RRSC.  The Scotts affirmatively alleged that RRSC's actions in failing to inform them of the default by Lavelle-Martin, Inc. and in refusing Mr. Martin's offer to re-lease the premises were so injurious to the Scotts that such actions released the Scotts from their surety obligations on the lease.

Following an ore tenus hearing, the trial court granted the Scotts' motion to strike RRSC's evidence and entered judgment in favor of the Scotts.  The trial court found that by refusing Mr. Martin's offer to re-lease the premises at the same rental rate as that contained in the defaulted lease, RRSC failed to mitigate its damages.  We awarded RRSC this appeal.

RRSC asserts that upon the tenant's default, Article XII of the defaulted lease authorizes the landlord to re-let the premises "under such terms and conditions as Landlord shall deem reasonable to any tenant or tenants which it may deem appropriate." This provision authorized RRSC to execute a new lease when Lavelle-Martin, Inc. defaulted on the prior lease and the new lease could contain any terms deemed reasonable by RRSC. Therefore, RRSC argues it had no duty to mitigate damages and the trial court erred in imposing such a requirement.

The Scotts do not disagree with RRSC's interpretation of Article XII but contend that Article XII is not part of their surety agreement. Rather, the Scotts assert that the sole terms of their surety agreement with RRSC are contained in Article XXIV and that in that article the Scotts only agreed to guarantee the "affirmative obligations of the Tenant," which, according to the Scotts, limits their obligation to promptly paying the agreed upon rent. Other than this express obligation, the Scotts assert that no other conditions contained in the lease applied to them. The terms of their surety agreement with RRSC are governed by principles of surety law, according to the Scotts, and under those principles, a surety is discharged "by *any* change in the obligation underlying the bond." Board of Supervisors of

Fairfax County v. Southern Cross Coal Corp., 238 Va. 91, 94, 380 S.E.2d 636, 638 (1989).  The Scotts conclude that because RRSC took steps to change the obligation underlying the agreement with the Scotts by refusing to accept Mr. Martin's offer, they are released from their surety obligation.

The dispositive issue for our determination is whether Article XXIV, the "Guaranty" provision, makes Article XII applicable to the Scotts.  Article XXIV provides:

> The [Scotts] join in this lease, as an inducement to Landlord to lease the demised premises to Tenant, for the purpose of jointly and severally guaranteeing to Landlord the punctual payment of all rent due hereunder and the due performance of all the other terms, covenants and conditions contained in this lease on the part of Tenant to be paid and/or performed thereunder, including but not limited to all damages, expenses and attorneys' fees that may be suffered or incurred by Landlord as a result of the nonpayment of rent or nonperformance of any other terms, covenants and conditions.

This article does more than obligate the Scotts to assure the prompt payment of the rent.  The article also provides that the Scotts guarantee payment of "all damages . . . suffered or incurred . . . as a result of the nonpayment of rent or nonperformance of any other terms."  Thus, if the landlord incurs damages because of the tenant's nonperformance, the Scotts are liable for those damages.  The Scotts' liability is limited, however, to damages that, under the terms of the

lease, can be recovered from the tenant for non-payment of rent.

Article XII prescribes a measure of damages recoverable by RRSC for nonpayment of rent. The article allows the landlord to re-let the premises upon the tenant's default at "such rental and upon such terms and conditions as Landlord shall deem reasonable," and authorizes the Landlord to recover from the tenant in the event of default, "all rentals . . . required to be paid by Tenant under this lease, less the rent, if any, collected by Landlord on reletting the demised premises." Therefore, the landlord can recover as damages any unpaid rental amounts less amounts received for re-leasing the premises on terms considered reasonable by RRSC.[2]

We conclude that the surety agreement between the Scotts and RRSC imposed liability on the Scotts for damages sustained by RRSC upon the default of Lavelle-Martin, Inc. in accordance with the terms of the lease. The damages sought by RRSC were consistent with the damages allowed under the lease for non-payment of the rent. Therefore, the trial court erred in striking RRSC's evidence because RRSC failed to mitigate its damages. We will enter judgment here in favor of RRSC in the

---

[2] The Scotts do not argue that RRSC's action in re-letting the premises was unreasonable under the terms of the lease; rather they only argue that this provision does not apply to them as sureties.

amount of $56,738.36, and remand the case to the trial court for further proceedings regarding attorneys' fees and costs.

<u>Reversed and remanded.</u>