# CIRCUIT COURT OF THE CITY OF NORFOLK

Gibson Equipment Co., Inc.

v.

AGM Development Corp. et al.

February 7, 2001

Case No. (Law) L99-2893

BY JUDGE JOHN C. MORRISON, JR.

This matter is before the court on the parties' Post-Trial Memoranda following an *ore tenus* hearing and argument. Defendants seek to be discharged from certain guaranty bonds entered into on or about April 6, 1987, by both Mr. Frank William Agnew, the father, and Mr. Michael Agnew, the son. Michael Agnew was at all relevant times the president of defendant corporation. William Agnew (also known as Frank) was a shareholder of the corporation at the relevant time but has since divested himself completely from the corporation. In 1992 William started the process of divesting himself by gifting his shares which process was completed sometime in 1994. In April of 1987, each of the Agnews signed a bond guaranty separately and individually on behalf of AGM as part of a plan to receive or rent equipment from the plaintiff, Gibson Equipment, on a credit basis. Their signature on the guaranty made both Michael and William "sureties" for any debts incurred at that time by AGM and "any incurred thereafter." A "surety" is different from a "guarantor" in that a surety is primarily obligated on the debt in which the principal also joins. A guarantor is one who makes a separate contract in which the principal does not join. The guarantor contracts to pay if the debt

cannot be made out of the principal debtor. In most cases the joint execution of a contract by the principal (AGM) and another (William and/or Michael) operates to exclude the idea of guaranty but rather points to suretyship. *See Phoenix Ins. Co. v. Lester Bros., Inc.*, 203 Va. 802, 127 S.E.2d 432 (1962). In this case since each of them signed jointly on behalf of the principal AGM, they are considered sureties who are principally liable for the debt.

In September of 1997, AGM began having major financial difficulty due to reduction in business dealings. AGM entered into what is known as a Debt Restructure Agreement ("DRA") with Gibson to try and manage their finances. AGM contemporaneously executed a promissory note signed by Michael Agnew as President of AGM. Pursuant to the DRA, AGM agreed to pay Gibson the balance due according to 70% of the net cash flow, a pro rata share, on a monthly basis. Gibson also received $17,413.13 as a down payment on the amounts owed which reduced the balance to $82,845.80. Gibson also agreed to release all of its outstanding mechanics liens for construction projects and further agreed to relinquish its right to be a petitioner in any involuntary bankruptcy proceeding filed against AGM based on debts in whole or in part on debts incurred prior to September 1, 1997. Debt Restructure Agreement at 2-3. Defendants eventually stopped making payments and plaintiff thereafter filed a Motion for Judgment for the balance due. Plaintiff relies on the two guaranty applications described above in asserting their right to payment. In the event that Michael is liable, defendants ask that William Agnew be released from any further obligation. Defendants assert the following three arguments: a) novation; b) material and substantial modifications by the plaintiff in entering the DRA without the knowledge or consent of William Agnew; and c) each guaranty was continuing in nature and should be held invalid because an unreasonable amount of time has passed since their execution. These three arguments will be discussed in turn.

## I. *Novation*

A novation is a mutual agreement among all the parties concerned to discharge a valid existing obligation and substitute a new valid obligation. *Dere v. Montgomery Ward and Co.*, 224 Va. 277, 295 S.E.2d 794 (1982). To effect a novation there must be a clear and definite intention on the part of all concerned; a novation is never to be presumed. *Id.* The party claiming a novation bears the burden of proving every essential element of the claim. There must be four elements in order for a novation to occur. Those elements are (a) there must be a previous valid obligation; (b) all parties must agree to the new contract; (c) the new contract must be a valid one; and (d) the old

obligation must be extinguished. The defendants argue that all of these elements are present in this case. Defendants assert that the previous obligation is acknowledged in Paragraph One of the DRA. They argue that the signatures by Gibson and AGM and Gibson's relinquishment of certain rights shows that they agreed to the new contract, and no one challenges the validity of the new obligation (elements b and c). As to the last element, that the old obligation must be extinguished, the defendants assert that in taking all of the facts and circumstances surrounding the DRA, the old debt is gone and all that exists is the new debt under the agreement. Plaintiff, on the other hand, asserts that there is no evidence that the underlying debt was extinguished, that in fact the evidence is to the contrary. The DRA acknowledges that "Vendor [Gibson] is owed a total amount of $116,087.51 for services and/or materials supplied to AGM prior to September 1, 1997. . . ."

The Court finds that there is insufficient evidence to show that the parties intended a novation. There must clear and definite intent that a novation was intended by the parties and the defendants fail in meeting that burden. There are no new creditors nor any new debtors involved with the debt at issue in this case. Further, the current obligation is exactly the same as the previous obligation which tends to show that the old obligation has not been extinguished, for they are one and the same. Therefore, this argument fails.

## II. *The Guaranties Were Continuing in Nature and Are Therefore Effective Only for a Reasonable Amount of Time*

The defendants essentially argue that each guaranty was continuous in nature because of the language contained therein. Specifically there is no language about termination; therefore, it is continuous. Inherent in the continuous nature of the guaranties is the requirement that they only be effective for a reasonable amount of time. Since thirteen years have elapsed and the business has increased substantially since their execution, defendants assert that they are or should be considered invalid. Most of the cases dealing with this issue involve situations in which there was language about termination in the guaranty itself, contrary to the situation at bar. One case does, however, state that the time of its duration (the guaranty) and the amount to be covered must be reasonable in light of the circumstances of each case. *Bank of Southside Va. v. Candelario*, 238 Va. 635, 385 S.E.2d 601 (1989).

The Court holds that the language of each guaranty show an intent to cover future indebtedness. Each guaranty uses the same language which essentially states that the surety is liable for all liabilities and obligations

which AGM may incur or which may become due from time to time to Gibson. Since Gibson continued to extend credit to AGM, they had a right to rely on the continuing effect of these guaranties. This is especially true in light of the facts defendants themselves argue. AGM was a start-up business at the time these guaranties were executed, and the only logical conclusion is that any business will increase with time, hopefully, as it did here. This argument fails.

### III. *Material Modifications*

As a general rule, a surety is discharged when the creditor releases the collateral security without consent of the surety. *Phoenix Ins. Co. v. Lester Bros., Inc.*, 203 Va. 802, 127 S.E.2d 432 (1962). However in this case, the guaranty application waives this particular defense. An *accommodation* surety is entitled to the "*strictissimi juris*" rule which states that the surety is discharged by any change in the obligation underlying a bond no matter how slight. *Board of Supervisors of Fairfax County v. Southern Cross Coal Corp.*, 238 Va. 91, 94, 380 S.E.2d 636 (1989). That rule does not apply to *compensated* sureties. *Id.* A compensated surety must show a material variation or change in the bonded obligation before they are discharged. *Id.* A compensated surety is one for hire, one who receives some benefit from the transaction. *Id.* They act, not to accommodate others, but to promote their own interests, and are to be judged accordingly. *Id.* The burden is upon the compensated surety to go forward with evidence showing a material variation in the bonded obligation. *Id.*; *Southwood Builders, Inc. v. Peerless Ins. Co.*, 235 Va. 164, 366 S.E.2d 104 (1988). In *Southwood Builders*, the general contractor let the subcontractor be paid money before it was due without telling the architects and the surety. The court found this to be a material deviation from the initial obligation and therefore ordered the surety to be discharged. *Id.* at 169. The court further held that a separate showing of prejudice to the surety was not necessary because the material deviation in and of itself establishes sufficient prejudice. *Id.*; *The Corner Associates v. W. R. Grace & Co.*, 988 F. Supp. 970 (E.D. Va. 1997) (holding that a lease amendment executed by a landlord and assignee without notice to the tenant/assignor and which added an option to terminate exercisable only by the landlord was a material alteration which discharged the tenant as surety).

In the case at bar, Mr. William Agnew never received any compensation from the corporation for his participation in the execution of any guaranty. He did own shares at one time and was an "officer" (in name only) initially; however, the Court finds him to be a mere accommodation surety at the time

he entered into the guaranty at issue. He did not benefit from the transaction at issue; he was merely helping his son start up a business. William Agnew's testimony reveals that he had just retired and was helping his son Michael on a part-time basis doing "minor things" in the first year of the business. He then went to work on a full-time basis as a real estate appraiser. *Transcript* at 82-83. William Agnew stated more than once during his testimony that he had never worked at the company, he only tried to help his son. He has never received any compensation or income from the defendant AGM, nor did he ever sign any other guaranty on behalf of AGM. There is no evidence that he was acting to "promote his own interests."

As to an accommodation surety, any change in the obligation underlying a bond no matter how slight, discharges that surety. *Board of Supervisors of Fairfax County v. Southern Cross Coal Corp.*, 238 Va. 91, 94, 380 S.E.2d 636 (1989). Here there was a change in the obligation underlying the bond signed by William Agnew. Plaintiff agreed in the Debt Restructure Agreement to relinquish any right that it may have had to be a petitioner in any involuntary bankruptcy proceeding against AGM. The waiver of this right by Gibson was not part of the underlying surety agreement and clearly was not waived by William Agnew as was, specifically, the right of Gibson to release collateral or other security as stated in the guaranty bond. This change may even be classified as a material deviation if William were deemed a compensated surety, as a bankruptcy proceeding could have resulted in the liquidation of any assets and application of such proceeds to reduce the debt in question. The Court, however, need not decide that issue since it has held William to be an accommodation surety.

Therefore, defendant's Motion with respect to Mr. William Agnew is granted in part based on the modification to the original obligation. Defendant's Motion with respect to Michael Agnew is overruled in all respects.