# Staunton

D. R. WADDELL AND JOSIE R. WADDELL V. ROANOKE MUTUAL
BUILDING & LOAN ASSOCIATION.

September 19, 1935.

Present, All the Justices.

The opinion states the case.

*James E. Palmer* and *H. M. Fox,* for the appellants.

*James A. Bear* and *Irvin A. Harvey,* for the appellee.

HOLT, J., delivered the opinion of the court.

This litigation deals with the liability of a grantee under a deed to him which recites the assumption of a mortgage debt secured by the land conveyed.

On June 16, 1931, the Roanoke Mutual Building and Loan Association by deed of general warranty conveyed to M. J. Robinson a tract of nine acres of land in Roanoke county. The consideration recited was $1,700 cash in hand paid.

On the same day Robinson conveyed it to James A. Bear, trustee. That deed contains this recital:

"WHEREAS, the said party of the first part has executed to said Association his bond bearing date with these presents in the sum of seventeen hundred and no/100 ($1,700.00) dollars with a condition thereunder written, in the following words and figures: The condition of the above obligation is such, that whereas the said party of the first part is a subscriber for seventeen (17) shares in the said Association for which he has received from the said Association the sum of seventeen hundred and no/100 ($1700.00) dollars, being an advance of the ultimate or par value of said shares: Now, if the said party of the first part shall well and truly pay to the said Association,

at its office in the city of Roanoke the sum of seventeen hundred and no/100 ($1700.00) dollars or shall pay the weekly interest, premium and dues of twenty-seven cents per share for each of said shares, together with all fines, assessments and penalties, if any according to the said constitution and by-laws then this obligation shall be void; otherwise it shall remain in full force and virtue, and

"WHEREAS, said party of the first part desires to secure the said bond the performance of the condition thereof as required by the constitution and by-laws of said Association;"

This conveyance was:

"IN TRUST, TO SECURE the bond aforesaid, and the true performance of the condition thereof. And it is understood and agreed, by and between the parties hereto, that in default in the payment by the said party of the first part of the sum of SEVENTEEN HUNDRED and no/100 ($1700.00) DOLLARS, hereby secured or of the weekly dues, interest, premium, fines, assessments and penalties, if any, as provided in the condition of the bond aforesaid, for eight successive weeks or more, or in the performance of any covenant in this deed contained, then the said party of the second part, so soon as he shall be required so to do by the said party of the third part, shall sell the property hereby conveyed at public auction."

Robinson paid $50 on account of this debt and no more. He afterwards put said nine acre lot in the hands of real estate agents for sale.

D. R. Waddell and Josie, his wife, were the owners of a 150 acre tract in Tazewell county.

On March 4, 1932, this contract was executed by the Waddells and Robinson:

"THIS CONTRACT, made and entered into this 4th day of March, 1932, by and between D. R. and Jessee Waddell and Jessie Waddell, his wife, parties of the first part, and J. M. Robinson (Single), party of the second part.

"WITNESSETH, That for and in consideration of the sum of $——— to be paid as follows, to-wit:

"One and no/100 ........ Dollars ($1.00) cash in hand paid by party of the second part to the parties of the first part, receipt of which is hereby acknowledged, and ——— Dollars ($  ) payable on delivery of deed as follows:

"The parties of the first part agree to deed to the party of the second part 115 acres of land more or less, situated and lying in Maiden Spring District, Tazewell county, Virginia. Upon the following conditions:

"The party of the second part agrees to pay to the party of the first part $900 evidenced by one interest bearing negotiable note in the sum of $900 payable in three years from even date herewith, interest payable semi-annually, secured by deed of trust on the 115 acres.

"The party of the second part agrees to sell to the parties of the first part nine (9) acres of land more or less with all appurtenances thereon situated and lying in the county of Roanoke, fronting on the highway from Salem to Hanging Rock, known as The Robinson Poultry Farm.

"The parties of the first part agreed to assume a loan now on poultry farm not to exceed $1,650, payable monthly in installments of $20 each, no interest.

"All deferred payments to be evidenced by interest-bearing negotiable notes of the purchaser and to be secured by a deed of trust on the hereinafter mentioned property.

"The parties of the first part hereby agree to sell to the party of the second part, that certain lot or parcel of land with all the appurtenances thereto belonging, situated in the county of Tazewell, Virginia, of Roanoke Virginia, and described as follows:

"In consideration of the above, the said party of the second part agrees to purchase the premises above described and to pay for the same in the manner above set forth, upon the tender of a proper deed with GENERAL WARRANTY of Title, and modern English covenants.

Conveyance to be made subject to the building and other restrictions to which the said land is now subject.

"And the said parties hereby bind themselves, their heirs, executors and adminstrators for the faithful performance of the above agreement on or before March 20, 1932.

"Insurance, taxes for the current year to be prorated.

"Witness the following signatures the day and year above written."

Subsequently, by deed of date March 4, 1932, (evidently this deed was dated back), and, as the Waddells assumed, in accordance with the terms of said contract, Robinson conveyed to the Waddells, the nine acre lot, the consideration there expressed being: "For and in consideration of the sum of TWENTY-FIVE HUNDRED DOLLARS ($2500.00) paid and to be paid as follows, to-wit: NINE HUNDRED DOLLARS ($900.00) cash in hand paid by the parties of the second part to the party of the first part, the receipt of which is hereby acknowledged, and the balance of SIXTEEN HUNDRED FIFTY DOLLARS ($1650.00) is payable by the said second parties assuming and agreeing to pay off said amount as it matures to Roanoke Mutual Building and Loan Association, Incorporated, this being the balance due on original amount of SEVENTEEN HUNDRED DOLLARS ($1700.00) evidenced by bond bearing date of June 16, 1931, executed by John M. Robinson, payable monthly, said bond being secured by deed of trust on the property herein described to James A. Bear, trustee."

This deed was drafted by Robinson's agent and was accepted by Mr. Waddell, an unlettered man, under the assumption noted. At the time the contract of sale was executed, Mr. Hogan, Robinson's agent, explained to him, that the debt assumed was one of $1,650, payable $20 per month without interest, which was in accord with the provisions of the contract of purchase.

For reasons satisfactory to themselves the Waddells wanted to sell the lot that they had just purchased, and in

the late spring or early summer of 1932, went to see Mr. C. P. Jenson, a real estate agent in Roanoke. Jenson told Waddell to bring him the deed. This was done. It did not seem to conform to the contract. Jenson then went to see the Loan Company and learned that eighty-two and a half payments of $20 each would not cancel the mortgage, but that if paid in such monthly installments, one hundred and thirty-two or thirty-three payments were necessary. Waddell did nothing with this land after he found out what the situation was, although before then he had rented it and had collected some rent. That is to say, after he had understood just what had been done he did nothing to confirm the contract.

On December 13, 1932, a decree was entered against Waddell and wife in favor of the Loan Company for $1,730.83, with interest from September 30, 1932, and an attorney's fee of ten per cent. The Waddells were adjudged to be principal debtors and Robinson surety therefor, and a commissioner was appointed to sell the land.

Under the contract of sale the party of the second part, Robinson, was to pay to the parties of the first part, the Waddells, $900, said sum to be evidenced by interest-bearing note due in three years. The Waddells assumed a loan on the nine acre lot, not to exceed $1,650, payable in monthly installments of $20 without interest.

The deed from Robinson to the Waddells recites the consideration to be $2,550, $900 cash paid by the Waddells to Robinson, and the balance of $1,650 was to be paid by the Waddells assuming and agreeing to pay off as it matured to the Loan Company its debt, that being the balance due on the original bond of $1,700, of date, June 16, 1931, payable in monthly installments.

The deed from Robinson was prepared by his agents and delivered to the Waddells, who did not read it. They were as we have seen, unlettered people and unversed in business. They assumed that it carried out their contract of purchase and in this were too confiding. Certain it is that after they understood the situation they did nothing

which can be construed as confirmation of the terms of their purchase as finally written.

A land owner who mortgages that estate is of course personally and primarily bound for the debt incurred. Upon sale to another who as part of the purchase price assumes and promises to pay this indebtedness, that purchaser becomes primarily bound, and the original debtor becomes surety. Of course these proceedings do not affect the creditor, who is not a party to the transaction. He may ignore it or he may adopt it. Ratification may be made to appear by the conduct of the parties *in pais,* or by the institution of a suit to enforce the obligation of assumption. *Hubard & Appleby* v. *Thacker,* 132 Va. 33, 110 S. E. 263, 21 A. L. R. 423. The creditor's right rests upon no contract with either the vendor or vendee, but upon the familiar principle that one may claim all the collateral security held by his debtor by way of equitable subrogation. "In doing so, however, he stands in his debtor's shoes, and is substituted to the rights and remedies of the latter. In other words, the new creditor takes the place of the old, and succeeds to his rights." *Willard* v. *Worsham,* 76 Va. 392.

"In such cases, however, the mortgagee does not acquire a right of action against the purchaser, but the benefit flowing to him from the contract is limited to a right to be subrogated to the rights of the debtor. His right is simply a right of substitution, subject, however, to the equities between the purchaser and his immediate grantor." *Osborne* v. *Cabell,* 77 Va. 462. That is to say, water can not rise above its source.

This principle is well stated in *Dunning* v. *Leavitt,* 85 N. Y. 30, 39 Am. Rep. 617, where it is said:

"I know of no authority to support the proposition that a person not a party to the promise, but for whose benefit the promise is made, can maintain an action to enforce the promise, where the promise is void as between the promisor and promisee, for fraud, or want of consideration, or failure of consideration. It would be strange, I

think, if such an adjudication should be found. The party suing upon the promise, in cases like *Lawrence* v. *Fox* (20 N. Y. 268), is in truth asserting a derivative right. In *Vrooman* v. *Turner,* 69 N. Y. 280, 25 Am. Rep. 195, it was held that an assumption clause in a deed did not give a right of action to the mortgagee, where the grantor was not himself liable to pay the mortgage debt, although in that case there was ample consideration for the promise of the defendant.

"There is no justice in holding that an action on such a promise is not subject to the equities between the original parties springing out of the transaction or contract between them. It may be true that the promise cannot be released or discharged by the promisee, after the rights of the party for whose benefit it is said to have been made have attached. But it would be contrary to justice or good sense to hold that one who comes in by what Judge Allen, in *Vrooman* v. *Turner,* calls 'the privity of substitution,' should acquire a better right against the promisor than the promisee himself had."

■ Relief may be granted to the grantee where either fraud or mutual mistake has been shown. 41 .C. J., page 728; 19 R. C. L., page 378; *Green* v. *Turner,* (C. C. A.) 86 Fed. 837. In this case it was held that rescission was not a condition precedent.

■ Where a deed departs from the contract, mutual mistake may be shown. *Elliott* v. *Sackett,* 108 U. S. 132, 2 S. Ct. 375, 27 L. Ed. 678; *Drury* v. *Hayden,* 111 U. S. 223, 4 S. Ct. 405, 28 L. Ed. 408.

■ If this litigation was between the Waddells and Robinson, plainly the facts could be made to appear. True consideration can always be shown, and so it could be shown that the assumptions written in the deed did not conform to the contract. The loan company is not a purchaser for value, but in equity is substituted to the rights of Robinson. Since it is substituted to his rights, we must examine his dealings to find what those rights are. Moreover, the loan company has lost nothing. Its

lien against the land has been in no wise affected, and Robinson remains bound as he was always bound.

It is true that in *Hubard & Appleby* v. *Thacker, supra,* the court speaks of the irrevocable character of an assumption, after the creditor had once recognized and ratified it. But what was there said was said with reference to the right of the vendor and vendee to concel their contract. That right continued up to the time of ratification, but was irrevocably lost thereafter. Ratification irrevocably crystalizes the rights of the parties, such as they are, but subject to all infirmities which may inhere in the assumption. The creditor is irrevocably subrogated to the rights of the vendor, but rights which rest upon subrogation must be measured by that yard-stick. Plainly one who is evicted by paramount title would not be bound. *Dunning* v. *Leavitt, supra.* And the same reasons lead to the same conclusion if an assumption is brought about by fraud or by a mutual mistake. We do not hold that there was fraud, but certainly there was a mistake. Both Robinson and Waddell believed that eighty-two monthly payments of $20 each would satisfy the debt. About fifty more were actually necessary, and it is no answer to say that the Waddells might have paid the debt at once in cash as a whole, and that then only the amount agreed upon would have been necessary. Doubtless they were not able to do this, and looked forward to meeting their obligations in monthly installments under their contract as they understood it.

Having reached the conclusion that the Waddells are not liable to pay in accordance with the terms of their deed, it is not necessary that other assignments of error be considered.

It is just possible that this land when sold may bring a sum sufficient to pay the plaintiff's debt, and of course it must be sold. For reasons stated the decree appealed from must be reversed, and the cause remanded.

*Reversed and remanded.*