## 51015. SOUTHLAND INVESTMENT CORPORATION v. McINTOSH et al.

STOLZ, Judge.

McIntosh (lessor) leased certain commercial realty to Southland (lessee) for 21 years. The lease agreement contained the following provisions: "21. So long as the premises are used for the original purpose, i.e., office and warehouse, Lessee shall have the right to sublease the whole or any part of said leased premises but it shall not have the right to assign this lease contract without the prior written consent and approval of the Lessor, which consent and approval on the part of Lessor shall not be unreasonably withheld. Should the Lessee either sublet the premises or assign this lease, in whole or in part, it shall nevertheless remain liable to Lessor for full payments of the rent and performance of all terms,

covenants and conditions according to the terms of this lease . . . 23. (a) Lessee shall have the right to consolidate with or merge into or sell or assign all or substantially all of its assets, including this lease to another corporation, provided said consolidated, merged or acquiring corporation shall be of at least equal financial responsibility and shall have a net worth of not less than that of Lessee immediately preceding such consolidation, merger or acquisition, and provided said consolidated, merged or acquiring corporation shall at the time of such consolidation, merger or acquisition execute with Lessor an instrument in writing, reasonably satisfactory to Lessor, duly accepting all of the liabilities and obligations imposed on Lessee hereunder, and in such event the consolidated, merged or acquiring corporation shall be deemed to be Lessee hereunder in place and stead of Lessee herein named. Such consolidation, merger, or assignment shall not release Lessee hereunder, which shall remain bound by all of the terms, convenants [sic] and conditions hereof . . . 26. Lessor, as used in this agreement, shall include his heirs, successors and assigns and his successors in title to the premises. Lessee shall include Southland Investment Corporation, its corporate successors and assigns and its successors in interest as Lessee hereunder, and, if this lease shall be validly assigned or sublet, shall include also the Lessee's assignees and sub-lessees."

Southland subsequently assigned the lease to another *with* the written consent of McIntosh. Then followed two assignments *without* the written consent of the lessor, first by the assignee and then by his assignee. The lease was then assigned, *with* the lessor's written consent, to another assignee, who allegedly defaulted on the terms of the lease. The lessor brought this action against the lessee to recover for rent, ad valorem state and county taxes, and necessary repairs allegedly owed under the lease.

The defendant lessee answered, denying any indebtedness, then filed a third-party complaint against all of the assignees of the lease. The plaintiff lessor filed a motion for summary judgment, supported by affidavits of himself and his bookkeeper showing the amounts owing

under the lease. The defendant filed affidavits in opposition to the motion which controverted the showing as to rent and necessary repairs, but not as to taxes. In its amended answer, the defendant pleaded the additional defenses that the plaintiff had released the defendant from its obligations under the lease by (a) consenting to the assignment of the leasehold interest to a subsequent assignee, and (b) consenting to the assignment of the leasehold interests to a financially irresponsible tenant and failing to enforce the lease against this tenant, thereby materially increasing the defendant's obligations and risk under the lease.

The trial judge granted a partial summary judgment in favor of the plaintiff lessor in the uncontroverted amount of taxes outstanding, from which judgment the defendant lessor appeals.

1. The appealability of the judgment in this case involving multiple claims and parties, is not affected by the provisions of Code Ann. § 81A-154 (b) (Ga. L. 1966, pp. 609, 658), as is contended by enumeration of error 3. "The grant of a summary judgment on any issue or as to any party is subject to review by direct appeal." *Whisenhunt v. Allen Parker Co.,* 119 Ga. App. 813 (1) (168 SE2d 827); Code Ann. § 81A-156 (h) (Ga. L. 1966, pp. 609, 660; as amended).

2. The general law as to the effect of assignment on the lessee's liability to the lessor is as follows: "The obligations and liabilities of the lessee to the lessor, arising from express covenants in the lease, are not affected by the lessee's assignment of the lease to a third person [citing *Garner v. Byard,* 23 Ga. 289], in the absence of an express or implied agreement on the part of the lessor to that effect, or in the absence of an action on his part which amounts to a waiver of his right to insist upon compliance with the covenants, or which estops him from relying thereupon, and this is true even though the assignment is with the consent of the lessor. . . The reason is that although by the assignment the privity of estate between lessor and lessee is terminated, there still remains the privity of contract between them created by the lease, which is not affected by the assignment . . . Thus, the lessee is liable after assignment upon his

express covenant to pay taxes, to repair, or to pay rent . . . "
49 AmJur2d 440, Landlord and Tenant, § 437.

Since the Georgia landlord and tenant relationship is peculiar to this state, with the estate for years assuming characteristics generally assigned to life estates by other jurisdictions, our courts do not always follow the general rule. For this reason, consideration must be given to the distinction between the interests of the usufruct and the estate for years, and their legal effects. 19 EGL 130, Landlord and Tenant, § 1.

The usufruct is created and controlled pursuant to Code Ann. Title 61, whereas the estate for years is statutorily controlled by Code Ch. 85-8. For the statutory and case law distinctions and considerations, see generally 19 EGL 132, Landlord and Tenant, §§ 2, 3 and 4. "When the owner of real estate grants to another the right to possess and enjoy the use of such real estate, the relation of landlord and tenant exists between them [Code Ann. § 61-101]. If the duration of this grant is less than five years it will be presumed to be only a usufruct, unless the parties agree to an estate for years, and if the duration is five years or more, it is prima facie an estate for years . . . The creation of either relation depends upon the intention of the parties . . . The usufruct or the estate for years may be created for any number of years." 19 EGL 140, Landlord and Tenant, § 7.

The difficulty of ascertaining whether a usufruct or an estate for years relation is intended to be created where, as here, the intention is not expressed by the parties, can be avoided by the fact that the results of both relations are here the same, due to the express contractual agreements as to the points in litigation. "The lessee of an estate for years may transfer the property without the consent of the lessor, unless the lease contains a covenant to the contrary. The usufruct is not assignable without the consent of the landlord unless the lease expressly allows it.

"The transfer of an interest that is assignable or made assignable, i.e., an estate for years or a usufruct with a provision allowing assignment, *will not au-tomatically operate to release the original tenant from liability for rent or on other covenants in the event of default*

*by the transferee,* unless the lessor, by consenting to the transfer, in effect substitutes the new tenant as his tenant. [Citing *Norge Sales Corp v. Baker,* 111 Ga. App. 373 (141 SE2d 786) and cits. and *G. W. Collier Estate v. Murray,* 145 Ga. 851 (90 SE 52). See also *Roberts v. Willink,* 21 Ga. 97, 103.] Another way in which the rule has been expressed in Georgia is that a tenant with an assignable interest may assign his lease, but he cannot substitute another paymaster in his stead, without the consent and acceptance of the landlord. [Citing *Garner v. Byard,* 23 Ga. 289 (68 AD 527).]

"Assuming for the moment that acceptance of a new tenant has the effect of releasing the old, as would generally be the case of the usufruct, but not of the estate for years, a substitution of tenants does not necessarily take place merely because the landlord receives rent from the transferee and allows him to remain in possession. As pointed out in the preceding section, acts even more affirmative by the landlord will not necessarily work a substitution. The landlord may be dealing with the transferee as though he were merely the agent of the transferor.

"As to the usufruct, it would seem clearly established in Georgia that when the landlord elects to proceed against the transferee as his own tenant, the old tenant is released from liability for future payments of rent. This would seem to be because the parties are only in a contract relation, and once the new tenant is contractually bound it may be inferred that the parties intend that the old be released. *This result could, of course, be changed by express agreement to the effect that the original tenant would remain a surety as to the obligations under the lease.* Such an agreement could be extracted by the landlord as a condition to his consent to the transfer, and *would be enforceable under normal contract principles.*

"On the other hand, *the rule as to automatic release of the old lessee when the lessor substitutes a new one should not fully apply to the estate for years,* since the parties are in both a contract and an estate status. No case in Georgia has dealt with this principle. In Norge Sales Corporation v. Baker, the court indicated that if the lessor and the transferee enter into a contract status that [sic] the old

tenant would be released. The same result is indicated in an earlier case. In Norge however, the parties had expressly provided for the release from liability of the grantee upon an assignment accepted by the lessor. The earlier case, Johnson v. First National Bank, involved a lease with provisions expressly dealing with the method of substitution. It is submitted that while a novation will release the grantee from liability, a mere election by the landlord to treat the transferee as the primary obligor should not have the effect of substituting paymasters in the estate for years situation. In the case of the usufruct, in view of the fact that the statutory prohibition against assignment is for the landlord's protection, and since the relationship is purely contractual, it is reasonable to assume a release of the old tenant, *unless the landlord expressly retains his rights against the old.* In the estate for years context the assumptions should work the other way; it should be assumed that the grantor holds the transferee liable for covenants based on privity of estate. To relieve the grantee it should be established that the grantor expressly or by implication consents to treat the old lease as having been surrendered.

"In this respect courts have used the suretyship idea in holding that where the agreement between the lessor and the transferee modifies the original lease in such a manner so as to increase the original lessee's liability, then the contract relations as to the former parties are severed." (Emphases supplied.) 19 EGL 186, Landlord and Tenant, § 30.

" 'The contract must be construed by the words, unless there be some reason for taking the case out of this first great rule for the construction of contracts.' " *Cherokee Credit Life Ins. Co. v. Baker,* 119 Ga. App. 579, 582 (168 SE2d 171) and cit. Paragraph 21 of the contract, quoted in the statement of facts hereinabove, clearly provides that "Should the Lessee either sublet the premises or assign this lease, in whole or in part, it shall nevertheless remain liable to Lessor for full payments of the rent and performance of all terms, covenants and conditions according to the terms of this lease." This stipulation is reiterated by the provision in paragraph 23(a), that "Such. . .assignment shall not release Lessee

hereunder, which shall remain bound by all of the terms, covenants and conditions hereof."

The lessee's contention that the contract did not contemplate further assignments from its assignee, is rebutted by the provision of paragraph 26 of the contract, that "Lessee shall include [Southland], its corporate successors and *assigns* [plural] and its successors in interest as Lessee hereunder, and, if this lease shall be validly assigned or sublet, shall include also the Lessee's *assignees* [plural] and *sub-lessees* [plural]." (Emphases supplied.)

Nor is the contention valid that the lessee was merely a surety and that the act of the landlord-lessor in consenting to the assignment of the lease to a financially irresponsible tenant injured the lessee as surety or increased its risk, or exposed it to greater liability, and therefore discharged it as surety, pursuant to Code § 103-203. "[A] provision in a lease contract that an assignment may be made by the lessee only with the landlord's written consent is a provision for the protection or convenience of the landlord *only* and may accordingly be waived." (Emphasis supplied.) *Carparking, Inc. v. Chappell's, Inc.,* 96 Ga. App. 862, 865(1b) (101 SE2d 894). The lessee was not relieved from its contractual obligation to make the required payments after it had itself assigned the lease to a financially irresponsible assignee-tenant, merely because the lessor had given his written consent to the assignment. Indeed, the lessor, in giving his consent, was entitled to rely on the lessee's compliance with the provision of paragraph 23(a) of the contract, to the effect that the lessee could assign the lease to another corporation provided the assignee corporation be of at least equal financial responsibility and net worth as the lessee, etc. Rather than increase the lessee's risk, the provisions for assignment provided a means for the lessee to decrease its risk, by assigning the lease to a more solvent corporation in the event the lessee's solvency became in jeopardy.

3. There was no genuine issue of material fact as to the liability for the taxes, which were payable under paragraph 3 of the contract. Although the lessor's uncontroverted affidavit shows the amount of taxes

outstanding to be $7,187.68, and the summary judgment is in the amount of only $7,184.68, the appellant has not objected to this discrepancy, hence waives it, and the judgment is fully authorized by the showing on the motion.

*Judgment affirmed. Deen, P. J., concurs. Evans, J., concurs in the judgment only.*

ARGUED SEPTEMBER 9, 1975 — DECIDED JANUARY 7, 1976.

*Sutherland, Asbill & Brennan, Barrett K. Hawks, James R. McGibbon, Carr, Wadsworth, Abney & Tabb, W. Pitts Carr,* for appellant.

*Vaughn, Barksdale & Nation, Sidney Nation, Thrasher, Costanzo & Sanford, R. Joseph Costanzo, Jr., Sam Dettelbach, Neely Freeman & Hawkins, John E. Sawhill, III,* for appellees.