The CORNER ASSOCIATES, Plaintiff,

v.

W.R. GRACE & CO.–CONN., Defendant.

Civil Action No. 97–1848–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 30, 1997.

---

Jeffrey L. Tarkenton, David, Hagner, Kuney & Davidson, Washington, DC, for Plaintiff.

Michael D. Moore, McGuire, Woods Battle & Boothe, McLane, VA, for Defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, which presents the question of whether a lessee, when it assigns its rights and obligations under a lease but remains liable thereunder, becomes a surety for the obligations of its assignee. The issue is one of first impression in Virginia.

### I. *Factual Background*

This action involves a lease agreement entered into on July 15, 1983, by The Corner Associates ("Corner"), as landlord, and W.R. Grace & Co. ("Grace"), as tenant, for premises located in the Seven Corners Shopping Center. Both parties understood at that time that Herman's World of Sporting Goods, an unincorporated division of Grace, would occupy the premises. *See* Lease ¶ 1(h).

On March 21, 1985, Grace transferred the business and assets of its Herman's World of Sporting Goods division to Herman's Sporting Goods, Inc. ("Herman's"). By means of an Assignment made and entered into on that same day, Grace assigned its rights and obligations under the Lease to Herman's.[1] Pursuant to the terms of the Assignment,

---

1. Article 21 of the Lease addresses assignments and specifically provides that

> Tenant shall have the right, without the consent of Landlord, to assign this Lease to a corporation or other business entity acquiring all or substantially all of the assets of Tenant's Herman's World of Sporting Goods division ... provided that Tenant shall give to Landlord due written notice and provided that such assignee shall assume this Lease in writing and will fully and punctually perform, observe and adhere to all the covenants and conditions contained in this Lease specifically including Article 5 [Use of Premises], and *further provided that Tenant shall remain liable under this Lease.*

Lease ¶ 21.7 (emphasis added).

Grace remained liable under the Lease.[2] *See* Lease ¶ 21.7; Assignment ¶ 1.

Herman's began to experience financial difficulties and filed for bankruptcy in 1993. By the summer of 1995, its financial situation had not improved, and Herman's asked Corner to locate a new tenant for the leased premises. *See* Sher Aff. ¶ 10. Corner agreed to undertake a search, provided that Herman's would agree to allow Corner to terminate the Lease on 120 days notice. *See* Sher Aff. ¶ 11. Thus, on August 1, 1995, Corner and Herman's executed an amendment to the Lease that provided Corner with a termination option, "contemplating that Corner would exercise this right if and when it located a replacement tenant."[3] Sher Aff. ¶ 13. Corner concedes that Grace, although still liable on the Lease, neither executed the amendment nor had notice of it. Corner states that this failure to include Grace in the amendment was due to an "administrative oversight on the part of Corner." Sher Aff. ¶ 16.

In 1996, Herman's filed a Chapter 11 bankruptcy petition in the District of New Jersey. On May 2, 1996, Herman's submitted a motion seeking entry of an order approving, among other things, its rejection of the Lease. The bankruptcy court granted that motion on May 13, 1996, and ordered that Herman's rejection of the Lease would be effective on the seventh day after written notice to Corner. On July 2, 1996, Herman's submitted such notice to Corner, and its rejection of the Lease thereafter became effective on July 9, 1996. On that same day, Herman's ceased its operations in the leased premises, and since that time Grace has not operated within the leased premises.

On July 9, 1996, Corner sent Grace a notice that Grace, as the tenant on the Lease, owed a total of $59,855.16 in minimum rent, common area operating and maintenance costs, and taxes due and owing under the Lease. Grace responded by denying any liability under the Lease. Grace maintains that when it assigned the Lease to Herman's, it assumed the status of a surety on the Lease and that its liabilities thereunder were discharged when Herman's and Corner materially altered the terms of the Lease without its knowledge or consent.

Citing Grace's alleged breaches and defaults under the Lease, Corner terminated the Lease by notice dated October 15, 1997, and filed this civil action, which alleges material breaches and defaults by Grace, and seeks damages, including attorneys' fees and costs.

Now before the Court is defendant Grace's Motion to Dismiss or, in the Alternative, for Summary Judgment. Because both parties rely on evidence outside of the pleadings, we will treat the motion as one for summary judgment. Indeed, the material facts stated here are not in dispute, and plaintiff represented to the Court at oral argument that the thrust of its argument is not that discovery is needed, but rather that because Grace is not a surety as a matter of law, it was not discharged of its liabilities under the Lease by reason of the amendment.

## II. *Discussion*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23,

---

**2.** Indeed, Grace remained liable under the Lease, at least until August 1, 1995, even though it did not hold any ownership interest in Herman's after 1986 when it sold all of its stock interest. *See* Strange Aff. ¶ 5.

**3.** The Lease originally provided for a term of fifteen years, terminating on January 31, 2000. *See* Lease ¶¶ 1(a), 2, 9.1; Motion for Judgment ¶ 8. The amendment, executed on August 1, 1995, provides:

Upon execution of this First Amendment to Lease, Landlord, at its sole discretion shall have the right upon one hundred twenty (120) days written notice to Tenant to terminate this Lease, provided, however, such termination shall in no event be effective prior to February 1, 1996. Tenant shall vacate the Premises on the 120th day of such notice, and this Lease shall terminate as if such day were the day originally set forth as the termination date of the Lease.

First Amendment to Lease ¶ 2.

106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 958 (4th Cir.1996). This action is ripe for summary judgment disposition because there does not appear to be any disagreement as to the material facts of the case. In fact, the parties agree that the only issue in this action is whether under Virginia law Grace is a surety for Herman's obligations and therefore entitled to a discharge from liability by reason of the amendment to the Lease made without its knowledge or consent.

## A. *Status of the Lessee After Assignment*

To determine whether Grace is liable under the Lease, we first must determine whether Grace assumed the role of a surety after it assigned the Lease to Herman's. Corner maintains that Grace did not assume the role of a surety because Virginia law does not provide that a lessee becomes a surety after an assignment. Corner is unable to point to Virginia law to support its position, but relies on foreign authority. *See, e.g., Southland Investment Corp. v. McIntosh,* 137 Ga.App. 216, 223 S.E.2d 257, 261 (1976); *Rauch v. The Circle Theatre,* 176 Ind.App. 130, 374 N.E.2d 546, 550 (1978); *Mitchell's, Inc. v. Friedman,* 157 Tex. 424, 303 S.W.2d 775, 777 (1957). We do not find, however, that these cases are persuasive.

In *Southland,* defendant lessee argued that it was discharged of liability under the lease because the landlord-lessor had consented to a later assignment of the lease to a financially irresponsible tenant. The Georgia Court of Appeals, however, disagreed because it found that the lessee's risk had not been increased by the assignment, as the lessee itself had assigned the lease. *See Southland,* 223 S.E.2d at 261. In support of its position that the defendant in that case did not assume the role of surety, Corner relies on the court's statement: "Nor is the contention valid that the lessee was merely a surety ...." *Id.* Corner, however, takes this statement out of context. The Georgia Court of Appeals did not find that the lessee was not a surety, but rather that its liability as a surety was not discharged because its risk had not been increased by the assignment in

question. Indeed, the court specifically implied that the lessee in these circumstances would assume the role of a surety. *See id.* at 260 ("[C]ourts have used the suretyship idea in holding that where the agreement between the lessor and the transferee modifies the original lease in such a manner so as to increase the original lessee's liability, then the contract relations as to the former parties are severed.").

Likewise, Corner relies on the statement in *Rauch* that "a true surety relationship, with all its attendant defenses, is not in fact created by an assignment of a lease." *Rauch,* 374 N.E.2d at 550. Again, however, Corner takes this statement out of context. Indeed, the Indiana Court of Appeals also stated in that same sentence that the surety relationship "does provide an apt analogy which is descriptive of the lessee's liability." *Id.*

Corner similarly takes out of context the statement by the Supreme Court of Texas in *Mitchell's* that "there is no merit in his contention that he is merely a surety for the payment of rent." *Mitchell's,* 303 S.W.2d at 777. The issue in that case was

> whether the original lessee in a building lease, who had assigned the leasehold estate with an agreement to remain responsible for the performance of all the lease terms, is obligated by the provisions of the lease to indemnify the lessor against liability for injuries received on the leased premises by a customer of the assignee.

*Id.* at 776. The court found that the original lessee did in fact remain liable under all of the lease provisions, including the indemnification provision. *See id.* at 777. Thus, the statement on which Corner relies, in the context of the entire decision, must be read as a finding that the lessee was liable for all of the lease obligations, and not merely the obligation to pay rent. In other words, the opinion is at most silent on the issue of whether the lessee assumes the role of surety. We find the remaining authorities cited by Corner equally unpersuasive.

Grace maintains that it became a surety for Herman's after it assigned its

obligations under the Lease to Herman's.[4] Although there is no caselaw directly on point in Virginia, there is authority from other jurisdictions to support Grace's position.  *See, e.g., Samuels v. Ottinger,* 169 Cal. 209, 146 P. 638, 639 (1915) ("The effect of the assignment is to make the lessee a surety to the lessor for the assignee, who, as between himself and the lessor, is the principal bound, whilst he is assignee, to pay the rent and perform the covenants."); *T.A.D. Jones Co. v. Winchester Repeating Arms Co.,* 55 F.2d 944, 947 (D.Conn.1932), *aff'd,* 61 F.2d 774 (2d Cir.1932); *Walker v. Rednalloh,* 299 Mass. 591, 13 N.E.2d 394, 397 (1938); Restatement (Second) of Property, Landlord and Tenant, § 16.1 cmt. e (1977).  We find this authority persuasive.

We also find convincing the reasoning of the Ohio Supreme Court in *Gholson v. Savin,* 137 Ohio St. 551, 31 N.E.2d 858 (1941).  In that decision, the court found that although an obligation in suretyship cannot be implied and never arises except by express contract, "the law will sometimes place a person, already bound upon some other contract, in the situation of surety by extending to him the privileges of this relationship." *Id.* at 862.  Specifically, the court found that when a lessee assigns the lease to one who covenants to pay the rent to the landlord who has notice of the assignment, the lessee "may insist that the rights of a surety be observed as to them." *Id.* Noting that there is no distinction between a suretyship created with the consent of the creditor and that which arises by operation of law, the court held: "In Ohio, as elsewhere, the rule prevails that when a lease is assigned by the lessee, the assignee becomes the principal obligor for the payment of the rent thereafter accruing and the future performance of the covenants, and the lessee assumes the position of surety toward the lessor." *Id.*

■ Furthermore, there is Virginia precedent that a mortgagee who assigns its rights and liabilities under the mortgage assumes the role of a surety after an assignment.  *See*

*Waddell v. Roanoke Mut. Bldg. & Loan Ass'n,* 165 Va. 229, 236, 181 S.E. 288 (1935); *Hofheimer v. Booker,* 164 Va. 358, 364, 180 S.E. 145 (1935).  By analogy, we find that the reasoning in those cases is applicable here.  Particularly in this case, where the intention of the parties was to have Grace remain liable under the Lease in the event that Herman's could not satisfy its obligations, Grace assumed the role of a surety.  It was always the understanding of the parties that Grace would remain liable "to ensure performance of the tenant's obligations regardless of the financial capability of any assignee of Grace." Sher Aff. ¶ 7. A surety always remains primarily liable on the contract, such that the creditor may seek to recover either from the debtor or from the surety.  *See Board of Supervisors of Fairfax Cty. v. Southern Cross Coal Corp.,* 238 Va. 91, 96, 380 S.E.2d 636 (1989); *First Virginia Bank–Colonial v. Baker,* 225 Va. 72, 77, 301 S.E.2d 8 (1983).

Finding the authorities relied upon by Grace more persuasive than the cases cited by Corner and finding no Virginia authority to the contrary, this Court holds that Grace assumed the role of a surety when it assigned its rights and obligations under the Lease to Herman's with the knowledge and consent of Corner.

**B.  Discharge of the Surety from the Obligations of the Lease**

■ Finding that Grace is a surety, we now turn to the question of whether its liability was discharged when Corner and Herman's amended the Lease.  In Virginia, any material variation in the agreement to which the surety has subscribed, if made without the surety's knowledge or consent, discharges the surety.  *See Southern Cross Coal Corp.,* 238 Va. at 94–95, 380 S.E.2d 636; *see also Walker,* 13 N.E.2d at 397 ("[O]n principles of suretyship, the lessee may be discharged by an agreement between the lessor and the assignee, the effect of which is to

---

4. The Assignment provides that the Assignee "does hereby assume and agree to keep, observe and perform all of the conditions, covenants, agreements and terms contained in said Lease on the part of the Assignor ... and does further agree that it shall hereafter be liable to the Landlord for the non-performance thereof." Assignment ¶ 2. The Assignment also provides: "Assignor remains liable under the Lease." Assignment ¶ 1.

vary the lessee's obligations under the original lease, since the lessee for many purposes is considered after an assignment to be a surety for the assignee's performance of the obligations of the lease."). Grace, therefore, argues that in light of the amendment to the Lease executed by Corner and Herman's, it should be discharged of any liability.

Corner argues that even if Grace were a surety, the amendment had no material effect on either Herman's or Grace's rights under the Lease such that Grace should be discharged. Corner contends that even though a termination option is normally a material alteration of the rights of the parties to a lease, the alteration in this case was not material because both Grace and Herman's benefitted from the amendment. Specifically, Corner asserts that the amendment to the Lease was "of practical benefit" to Grace, even though it did not consent or even have knowledge of such amendment, because Grace would have been relieved of liability if Corner had exercised the option to terminate. *See* Sher Aff. ¶ 15. Corner therefore argues that the Lease amendment was not material so as to discharge Grace's liability.

■ This Court finds Corner's argument flawed because prejudice is not a requirement for discharge. As Grace points out, a surety is discharged when there is a material variation of the agreement even if there is not a separate showing of prejudice. *See Southwood Builders, Inc. v. Peerless Ins. Co.*, 235 Va. 164, 170, 366 S.E.2d 104 (1988). The Supreme Court of Virginia has held that a specific showing of prejudice is not necessary because the material variation by itself establishes sufficient prejudice. *See id.*

Even if prejudice were a requirement for discharge, we find that Corner's argument would fail. Grace correctly points out that the Lease became less appealing after the amendment because the option to terminate was exercisable only by Corner. The termination option allowed Corner to terminate the Lease, which originally was scheduled to terminate on January 31, 2000, with only 120 days notice. We find that such an amendment is inherently prejudicial because it undercut the attractiveness of the Lease to perspective tenants.

III. *Conclusion*

Because we find that Grace assumed the role of a surety after it assigned the Lease to Herman's and that the later amendment to the Lease was a material alteration to which Grace did not consent, Grace cannot be held liable under the Lease. Accordingly, Grace is entitled to summary judgment, and an appropriate Order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.