# CIRCUIT COURT OF LOUDOUN COUNTY

Prologis Trust

    v.

DuPont Commercial
Flooring Systems, Inc.

November 4, 2003

Case No. (Law) 27325

BY JUDGE JAMES H. CHAMBLIN

This case came before the Court on September 16, 2003, for trial without a jury on claims for breach of a lease. Upon consideration of the evidence presented, the argument of counsel, and the post-trial memoranda, I find in favor of the Plaintiff, Prologis Trust, and it is granted a judgment against the Defendant, DuPont Commercial Flooring Systems, Inc., in favor of Prologis Trust in the amount of $31,548.55 on its claim for damages for breach of the lease.

*Facts*

On March 7, 1997, the Plaintiff, Prologis Trust ("Prologis"), and the Defendant, DuPont Commercial Flooring Systems, Inc. ("DuPont"), through their predecessors in interest, Security Capital Industrial Trust and MSA Industries, Inc., entered into a Lease Agreement (the "Lease") for property located at 113 Executive Drive, Suite # 125, Sterling, Virginia, in Loudoun County. The Lease expired on March 31, 2002.

DuPont used the Property for a commercial carpet business under the trade name of Kemper Carpet. On January 18, 2000, DuPont assigned its interest in the Lease to Nations Flooring, Inc. ("Nations Flooring") effective as of July 1, 1999. Nations Flooring operated a carpet business at the Property under the trade name of Kemper Carpet Barn. The assignment was made by the Lease Assignment and Assumption Agreement dated January 18, 2000, between DuPont, as assignor, and Nations Flooring, as assignee. Prologis was

not a party to the Assignment Agreement. However, Prologis never objected to the Assignment Agreement and accepted rent from Nations Flooring after the assignment. At trial, the parties stipulated that Prologis impliedly consented to the assignment of the Lease by DuPont to Nations Flooring.

In October 2001, Nations Flooring ceased paying rent. Prologis filed an unlawful detainer action against DuPont in October 2001, but it was dismissed because DuPont asserted that it did not have possession of the Property. Thereafter, Prologis filed an unlawful detainer action against Nations Flooring.

Because the rent was not paid for October 2001, Prologis on October 20, 2001, gave notice that, if the default was not cured within five days it would elect to terminate the tenant's right to possession under the Lease without terminating the tenant's obligations under the lease.

While the unlawful detainer action was pending, Nations Flooring, on December 20, 2001, filed a petition in bankruptcy in the United States Bankruptcy Court for the Southern District of New York.

On February 12, 2002, counsel for Prologis and Nations Flooring agreed in writing that Prologis would not object to a motion to be filed by Nations Flooring in the bankruptcy proceeding for an order rejecting the Lease as of December 20, 2001, surrendering the Property, and allowing Nations Flooring to abandon all the personal property remaining on the Property. On February 13, 2002, Nations Flooring filed the motion, and on March 1, 2002, an order was entered in the bankruptcy court authorizing Nations Flooring to reject the Lease as of December 20, 2001, approving the letter agreement dated February 12, 2002, and deeming the personal property located on the Property to be abandoned under the Bankruptcy Code.

After entry of the order by the bankruptcy court, Prologis personnel were finally able to re-enter the Property. It proceeded to clean up the property. In doing so, it incurred certain expenses and it bartered with other companies to clean up and remove the personal property left on the Property.

The personal property abandoned at the Property included a carpet cutting machine, carpet racks, and five delivery vans. In exchange for the carpet racks, Sully Carpet extensively cleaned up the Property. Prologis had Henry's Wrecker Service tow away the vans at no cost to Prologis. Finally, the carpet cutting machine was removed by Sully Carpet at no cost. Prologis gave away the carpet racks, delivery vans, and carpet cutting machine.

On August 29, 2002, Prologis filed this suit against DuPont for damages resulting from breach of the Lease. Prologis seeks to recover over $90,000.00 for unpaid rent and rent-related charges under the Lease, attorney's fees, and repair costs.

## Legal Analysis

DuPont's defenses may be summarized as follows:

1. By virtue of the Assignment DuPont became a surety and has been discharged from liability under the Lease.

2. Prologis failed to mitigate its damages.

3. DuPont's liability as surety has been discharged in an amount equal to the value of the personal property abandoned at the Property.

4. Prologis is not entitled under the Lease to recover any attorney's fees.

The defenses are addressed below.

### A. *Suretyship Issue*

Relying on *The Corner Associates v. W. R. Grace & Co.*, 988 F. Supp. 970 (E.D. Va. 1997), *aff'd*, 173 F.3d 424 (4th Cir. 1999), DuPont asserts that it is a "well-established" legal principle that "the effect of [an] assignment is to make the lessee a surety to the lessor for the assignee." 988 F. Supp. at 974. It is recognized in *Corner Associates* that the issue is one of first impression in Virginia. There are no reported Virginia cases supporting the principle. There is merely one case, decided similarly by the United States District Court for the Eastern District of Virginia and the Fourth Circuit Court of Appeals, saying this is the law in Virginia. That is not a "well-established" legal principle. The opinion in *Corner Associates* recognizes that there is a conflict of authority throughout the United States on the issue.

There being no authority from a Virginia state court, the federal court decision in *Corner Associates* is no more persuasive than a decision from another state. The similarity between the lease assignment in this case and the deeds of trust assumed in *Hofheimer v. Booker*, 164 Va. 358 (1935), and *Waddell v. Roanoke Mut. B. & L. Ass'n*, 165 Va. 229 (1935) (upon the sale of real estate whereby the purchaser assumes a deed of trust the seller became a surety), is somewhat persuasive, but is not dispositive under the facts of this case.

A surety arrangement is a three party agreement among a principal obligor, his obligee, and a surety. The surety makes a direct promise to perform the obligation in the event the principal obligor fails to perform. As between the principal obligor and the surety, the ultimate liability rests upon the former, but the obligee has a remedy against both. *First Va. Bank-Colonial v. Baker*, 225 Va. 72, 77 (1983).

A surety arrangement is made where the surety agrees, either as an accommodation or for compensation, to perform the obligations of the principal obligor. An obvious example is a surety bond situation. The surety

relationship comes about by express agreement. It cannot be implied. The relationship among Prologis, Nations Flooring, and DuPont was created by a business transaction between DuPont and Nations Flooring. It is not a situation whereby DuPont merely agreed to be surety for the performance of Nations Flooring's obligation under the Lease. DuPont was obligated under the Lease before Nation's Flooring agreed to be obligated under the Lease. Considering that DuPont was so obligated before the Assignment, it is too simplistic and contrary to contractual expectations to allow the Assignment to convert DuPont from a contractually bound tenant under the Lease to merely a surety for the performance of obligations assumed by Nations Flooring under the Lease.

The Assignment does not state that DuPont becomes merely a surety as a result of the assignment. Prologis is not a party to the Assignment Agreement. It may have been stipulated that it impliedly consented to the assignment of the Lease, but it did not stipulate that it consented to DuPont becoming a surety for Nations Flooring.

Allowing DuPont to be transformed from a party to a contract (a tenant under the Lease with obligations) to a surety as a matter of law because of the Assignment rewrites the Lease and places different obligations on DuPont. There is no legal justification for this.

The better way to view the parties and their obligations is to examine their written agreements and see exactly what they agreed to and whether the actions of the parties in some way affected their rights and obligations under their written agreements.

Therefore, I do not find that DuPont became a surety as a result of the Assignment, and I further find that DuPont's rights and liabilities must be based upon what it agreed to in the Lease and the Assignment in light of all the circumstances of this case.

B. *DuPont's Obligations Under the Lease and the Assignment*

Paragraph 17 of the Lease provides in pertinent part:

Notwithstanding any assignment or subletting, Tenant and any guarantor or surety of Tenant's obligations under this Lease shall at all times remain fully responsible and liable for the payment of the rent and for compliance with all of Tenant's other obligations under this Lease (regardless of whether Landlord's approval has been obtained for any such assignments or sublettings).

Paragraph 4 of the Assignment Agreement provides, in pertinent part:

Assignor hereby expressly covenants and agrees that, notwithstanding this Agreement and the assignment consented to herein, it shall continue at all times to be and remain liable to Landlord under the Lease for the timely payment of all Rent, Additional Rent, and other sums due under the Lease to be performed by "Tenant" thereunder. Assignor hereby covenants and agrees that its obligations hereunder and under the Lease shall remain in full force and effect without regard to, and the obligations of the Assignor shall not be affected or impaired by, any bankruptcy, insolvency, reorganization, or similar proceeding involving or affecting Assignee. . . .

The obligations of Assignor hereunder and under the Lease shall continue in full force and effect and shall extend to any amendments or modifications of the Lease (including, specifically, those made hereby) and to any successor or assignee of "Tenant's" interest in and to the Lease, whether or not Assignor shall have had notice thereof.

The foregoing provisions make it clear that DuPont remained fully liable for the payment of rent and for compliance with all the tenant's obligations under the Lease even if DuPont assigned the Lease. Under the Assignment Agreement, DuPont continued to remain liable under the Lease for the payment of rent and all other sums due under the Lease by the tenant. Further, DuPont agreed that its obligations would not be "affected or impaired" by any bankruptcy of Nations Flooring. Even more so, DuPont agreed that its obligations under the Lease would remain in effect and extend to any amendments or modifications of the Lease whether or not DuPont had notice thereof.

Despite any bankruptcy of Nations Flooring or any action of the bankruptcy court or any subsequent agreement between Prologis and Nations Flooring, DuPont remained liable for the sums due from the tenant under the Lease. Hence, Prologis is entitled to a judgment for its damages as a result of the failure of DuPont to pay the sums due under the Lease.

C. *Prologis' Damages*

Prologis' claimed damages fall into three categories:

1. Unpaid rent, and associated late fees, totaling $59,900.63, for October 2001 through March 2002;

2. Attorney's fees totaling $13,247.96;

3. Cost of repairing damages to the Property totaling $21,097.92. See Plaintiff's Exhibit 9.

For reasons stated above, Prologis is entitled to recover the unpaid rent plus associated late fees totaling $59,900.63. Similarly, Prologis is entitled to recover the cost of the repairs totaling $21,097.92.

Attorney's fees can only be recovered if permitted by the Lease. The Lease does not have a general attorney's fee provision. Paragraph 24 of the Lease contains the only references to recoverable attorney's fees, and it provides, in pertinent part:

> If the Premises are not relet, then Tenant shall pay to Landlord as damages a sum equal to the amount of the rental reserved in this Lease for such period or periods, plus the cost of recovering possession of the Premises (including attorneys' fees and cost of suit), the unpaid Base Rent and other amounts accrued hereunder at the time of repossession, and the costs incurred in any attempt by Landlord to relet the Premises.

The only applicable attorney's fee provision allows for the recovery of such fees as part of the cost of recovering possession of the Property.

Plaintiff's Exhibit 9 (list of damages) contains seven entries for payment of attorney's fees but with no other documents to explain what the services provided were.

Prologis chose to terminate Nations Flooring's right to possession, but it did not terminate the Lease. Prologis never elected to terminate the Lease. It allowed the Lease to expire on its own terms at the end of March 2002. Because Prologis chose to merely terminate possession, it can only collect attorney's fees for recovering possession under the portion of paragraph 24 of the Lease quoted above.

Prologis did not offer evidence from which it can be determined which attorney's fees are attributable to recovering possession. Its counsel's fees for this suit are not recoverable because it recovered possession in February 2002 before this suit was filed on August 29, 2002. Prologis recovered possession in the bankruptcy court. Plaintiff's Exhibit 9 shows a payment to the Ackerman firm, Prologis' bankruptcy counsel, but there is no supporting documentation of what portion of the fee was for obtaining possession.

Prologis has failed to present sufficient evidence of the attorney's fees it incurred in recovering possession of the Property.

## D. *Failure to Mitigate Damages*

DuPont offered evidence that Prologis gave away personal property abandoned at the Property having a total value of $49,450.00. The personal

property included a carpet cutting machine valued at $15,000.00, carpet racks valued at $15,000.00, and five delivery vans valued at $19,450.00. The cutting machine was eventually resold by the donee for $5,000.00, and the donee of the vans eventually sold four of them at auction for a total of $2,625.00.

After the bankruptcy court approved the rejection of the Lease and the abandonment of the personal property at the Property, Prologis proceeded to recover possession, clean up the premises, get rid of the abandoned property, and get the premises ready to be relet. Although the motion filed with the bankruptcy court stated that the personal property to be abandoned "has minimal value and the costs of removing, storing, and selling such property would likely exceed its value," the court order concerning the motion does not make that specific finding. Prologis did not investigate to see if there was any value in the abandoned property. It apparently believed that the property had been determined by the bankruptcy court to have no value or it felt that DuPont would be liable for all sums due under the Lease in any event.

DuPont did not agree to the action of the bankruptcy court. It was not made a party to that proceeding. Prologis was wrong in any assumption that DuPont would be liable for all sums due under the Lease regardless of the action of the bankruptcy court or whatever action Prologis may or may not take.

Prologis had a duty to minimize its damages. There was personal property remaining on the Property, which Prologis could have sold to recoup some of its loss. However, Prologis decided to merely give the abandoned property away because it felt that it was authorized to do so by the bankruptcy court and that "DuPont is still on the hook for all past due amounts." See "A/R Authorization Write Off Sheet," Defendant's Exhibit 5. Prologis did so at its own risk. DuPont offered credible evidence that Prologis gave away personal property valued at $49,450.00 without even investigating to see if the property had any value before giving it away. Under these circumstances, the amount that Prologis would otherwise be able to recover should be reduced by $49,450.00 for failure to mitigate its damages.

354

*Final Order*

Prologis is entitled to a judgment against DuPont:

| | |
|---|---|
| On account of unpaid rent<br>    and associated late fees: | $ 59,900.63 |
| Plus cost of repairs: | 21,097.92 |
| Total: | $ 80,998.55 |
| Less: Failure to mitigate damages:<br>    abandoned personal property given away: | - 49,450.00 |
| Judgment for: | $ 31,548.55 |