# Richmond

## THE PHOENIX INSURANCE COMPANY v. LESTER BROTHERS, INCORPORATED.

October 8, 1962.

Record No. 5466.

Present, All the Justices.

*Aubrey R. Bowles, Jr. (Jack N. Herod; Irvin W. Cubine; Bowles, Boyd and Herod,* on brief), for the plaintiff in error.

*John D. Epperly (Broaddus, Epperly and Broaddus,* on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Lester Brothers, Incorporated, hereinafter referred to as Lester, filed a motion for judgment against The Phoenix Insurance Company, hereinafter referred to as Phoenix, seeking to recover the sum of $4,025.00 which was alleged to be due according to the provisions of a bond executed by Phoenix, under which Lester was a third party beneficiary.

Phoenix filed grounds of defense and also a demurrer. All questions of law and fact were submitted to the trial judge, who overruled the demurrer and held that Lester was entitled to recover the sum of $3,939.00. From a final order awarding judgment in accordance with the judge's ruling, Phoenix was granted a writ of error.

The evidence, which was stipulated by the parties, shows that on November 15, 1956, Michael Brothers, hereinafter referred to as Michael, building contractors, entered into an agreement with Sam E. Butts for the construction of a dwelling on the latter's property in Berkeley Springs, West Virginia, for a total price of $11,600.00.

Lester and Michael entered into an agreement by the terms of which Lester agreed to furnish certain materials, for a total price of $6,082.00, to be used by Michael in the construction of the Butts residence.

Butts secured a loan from the Administrator of Veterans Affairs to defray the cost of construction. Butts and Michael entered into a further agreement, dated July 9, 1957, providing that payment under the loan should be made by the Veterans Administration through its Berkeley Springs counsel, S. D. Helsley, to Michael upon evidence

that no liens were outstanding or pending as of the date payments were due.

Michael addressed a letter to Lester and Helsley in which it agreed to endorse the Veterans Administration checks, representing payments on the loan, and permit Helsley to retain and pay over to Lester, in satisfaction of the contract price of the Lester materials, $2,043.00 from the first check of $3,596.00, $1,000.00 from the second check of $2,552.00 and $3,000.00 from the third check of $5,452.00.

Helsley, on July 13, 1957, wrote to Lester acknowledging receipt of Michael's authorization to make payment to Lester and advising of his acquiescence in the arrangement, "in order to help your company make the sale." He also told Lester that, "Michael Brothers are now bonded and that makes you doubly safe in this venture."

The bond in question, which was required by the Veterans Administration, was not executed until August 16, 1957. It is set out in full in the margin.[1]

---

[1] *KNOW ALL MEN BY THESE PRESENTS*: That we, The Michael Brothers, a partnership of H. Benton Michael and Lee U. Michael of Berkeley Springs, West Virginia (hereafter called the Principal), as Principal, The Phoenix Insurance Company, a corporation organized and existing under the laws of the State of Connecticut and duly authorized to transact business in the State of West Virginia (hereinafter called the Surety), as Surety, are held and firmly bound unto H. V. Higley in his official capacity as Administrator of Veterans' Affairs, an Officer of the United States of America, and his successors in that office as such (hereinafter called the Obligee), as Obligee, in the just and full sum of Eleven Thousand Six Hundred Dollars ($11600.00) lawful money of the United States of America to the payment of which sum, well and truly to be made, the Principal and the Surety bind themselves and their respective heirs, executors, administrators, successors, jointly and severally, firmly by these presents.

Whereas, the Principal has entered into a written contract (hereinafter called the Contract) with Sam E. Butts (hereinafter called the Veteran), dated the 15th day of November, 1956, to construct and complete for him a private dwelling in the Town of Bath (Berkeley Springs) Morgan County, West Virginia, which Contract is hereby referred to and expressly made a part hereof as fully and with the same force and effect as if entirely written herein, and

Whereas, in order to meet his financial obligation under the Contract, the Veteran has applied to the Obligee for a Ten Thousand Dollar ($10,000.00) mortgage loan under the provisions of Section 512 of the Servicemen's Readjustment Act of 1944, as amended, and the regulations pursuant thereto, and

Whereas, in order to induce the Obligee to grant the loan so applied for by the Veteran and in order to induce the Obligee to make disbursements to the Principal from the proceeds of such loan during the progress of construction under the Contract, the Principal has entered into an ancillary written agreement with the Veteran, dated the 9th day of July, 1957, which agreement is hereby referred to and expressly *make* a part hereof as fully and with the same force and *effects* as if entirely written herein, and

Whereas, the Obligee has refused to grant the loan so applied for by the Veteran unless and until the Obligee has been indemnified against any and all loans, cost,

Construction of the dwelling was commenced and Lester furnished the materials required under its contract with Michael. Helsley paid Lester the $2,043.00 payment from the first check received from the Veterans Administration, but retained the $1,000.00 payment due from the second check, "in anticipation of the possible filing of a mechanic's lien."

Before the dwelling was completed, Michael was adjudicated bankrupt. Although Lester received notice of the bankruptcy proceedings, it failed to file a claim for the balance due for the materials it had furnished.

The trustee in bankruptcy received from Helsley $1,326.70, held by him on account of the Butts loan, and from the Veterans Administration the balance of the loan in the sum of $5,452.00. The trustee completed the Butts dwelling at a cost of $1,639.26.

Lester also failed to file a ,mechanic's lien for its claim, and after the statutory period for the filing thereof had passed, the trustee in bankruptcy distributed the funds remaining in his hands to the general creditors of Michael. A discharge in bankruptcy was awarded Michael in October, 1959.

Phoenix had no notice of Michael's default under the bond, nor of the bankruptcy proceedings, until November 2, 1959, when Lester

---

damage, charge, liability or expense which he may sustain or be put to by reason of any default by the Principal under the *Constract,* and

Whereas, the Surety has agreed and does hereby stipulate that no change, extension of time, *alternation* or addition to the terms or conditions of the Contract or in the work to be done and completed thereunder or in the plans and specifications upon which the Contract is bottomed shall in anywise adversely effect the obligation of the Surety hereunder or operate to discharge the Surety herefrom.

Now, therefore, the condition of this obligation *as* such that if the Principal shall promptly and faithfully fulfill in all respects its obligations under the Contract, shall comply in all respects with the terms and conditions of the Contract including the plans and specifications upon which the Contract *in* bottomed and such *alternations* or additions to the Contract and to such plans and specifications as are therein provided for, and shall pay all just claims and demands of any employee, person, firm or corporation for labor, materials machinery or equipment furnished for or used in connection with the performance of the work under the Contract then this obligation shall be null and void, otherwise this obligation shall remain in full force and effect,

Whenever the Principal shall be in default under the Contract and shall be declared by the Obligee to be in such default the Surety will (a) within fifteen (15) days of such declaration take over and assume completion of the Contract in accordance with its terms and conditions, or (b) will within fifteen (15) days after determination of the reasonable cost of completion pay such cost in cash to the Obligee.

Signed, sealed and delivered at Berkeley Springs, West Virginia, this the 16th day of August 1957, as witness the Principal and the corporate name and the corporate seal of the Surety hereunto affixed by their respective duly authorized representatives.

made demand on Phoenix for the payment of its claim, which it alleged to be due under the terms of the bond.

Phoenix first contends that it is relieved from liability because the terms of the bond required notice of default for the non-payment of Lester's claim, and no such notice was given.

In support of this contention Phoenix argues that although the bond was dual in nature, that is, both a payment bond and a performance bond, the fact that the agreement of July 9, 1957, was made a part of the bond rendered the whole obligation one of performance. It further says that since this was true the default in the payment of Lester's claim required notice to Phoenix, in accordance with the last paragraph of the bond.

In disposing of this argument, two things must be borne in mind. First, that it was the default of Michael, the principal, which was, in any event, alone insured against by the bond. Second, that the agreement of July 9 merely provided the means by which Butts and the Veterans Administration made payments on the construction contract from the loan, through Helsley, direct to Michael.

Phoenix does not contend that Michael defaulted in the performance of any obligation that may have been imposed upon it by the July 9 agreement. Phoenix cannot, therefore, rely upon any default in that agreement that could have been the subject of the requirement of notice.

The argument of Phoenix in this connection seems to reduce itself to the proposition that Lester defaulted under the July 9 agreement by not securing the funds from Helsley which Phoenix claims were available for the payment of Lester's claim. The fallacy in this argument is obvious.

In the first place, Lester was not a party, directly or indirectly, to the July 9 agreement and could not, therefore, be held to be in default thereof. Second, the bond in no manner insures any performance by Lester. In fact, Lester is a beneficiary of the bond, which Phoenix readily concedes. Phoenix cannot say that because Lester failed to collect the money due it there was then a default under the bond, for which Phoenix was entitled to notice. Third, the funds to liquidate Lester's claim were not available to it as Phoenix asserts. The payment to Lester of the $1,000.00 from the second loan payment check was refused by Helsley, and properly so, because he was not furnished with evidence that no liens were outstanding or pending as of the date the payment to Michael was due. The final check of $5,452.00 never came into Helsley's hands, so that the agree-

ment of July 9, and Michael's authorization to pay $3,000.00 thereof to Lester, never came into play.

We are of the opinion that the requirement for notice in the bond relates solely to that portion thereof dealing with default in the performance of the construction contract between Butts and Michael, and not to a failure on the part of Michael to pay claims for labor and materials. Had it been the intention of Phoenix to condition its liability for such claims upon notice, such a provision would surely, in clear language, have been inserted in the bond.

Phoenix also argues, in support of its first contention, that its obligation under the bond was one of guaranty, for a default of which notice was required under the general law, rather than one of surety for a default of which no notice was required.

The distinctions between a contract of guaranty and one of surety have been carefully drawn and clearly defined and are ably detailed in *Piedmont Guano & Manuf'g Co. v. Morris & als.*, 86 Va. 941, 944, 945, 11 S. E. 883:

". . . Guaranty is distinguished from suretyship in being a secondary, while the latter is a primary obligation.

"The contract of the guarantor is his own separate undertaking, in which the principal does not join. The guarantor contracts to pay, if, by the use of due diligence, the debt cannot be made out of the principal debtor, while the surety undertakes directly for the payment, and so is responsible at once if the principal debtor makes default; or, in other words, guaranty is an undertaking that the debtor shall pay; suretyship, that the debt shall be paid.

"A guarantor is often discharged by the indulgence of the creditor to the principal, and is usually not responsible unless notified of the default of the principal. A surety, on the other hand, is an original promiser and debtor, and is held ordinarily to know every default of his principal. A surety, by his contract, undertakes to pay if the debtor do not; the guarantor undertakes to pay if the debtor cannot. The one is insurer of the debt; the other an insurer of the solvency of the debtor."

In *Goodrich Rub. Co. v. Fisch*, 141 Va. 261, 269, 127 S. E. 187, it is said:

"It is certain that in most cases 'the joint execution of a contract by the principal and another operates to exclude the idea of a guaranty, and that in all cases such fact is an index pointing to suretyship.' "

In the case before us, the bond was executed *jointly* by Michael, the principal, and Phoenix, the surety, binding themselves *"jointly*

and severally." In clear language which permits of no other construction, Phoenix obligated itself to pay those claims for labor and material which Michael did not pay. The obligation of Phoenix, with respect to such claims, was thus a primary, unconditional and absolute undertaking. Its contract, in unmistakable terms, was not one of guaranty but of surety, for the default of which no notice was required.

The next, and final, contention of Phoenix is that it was released from liability on the bond because of Lester's conduct.

The gist of the argument of Phoenix, in this connection, is that the effect of the July 9, 1957, agreement between Butts and Michael, coupled with the authorization by Michael to Helsley to make the payments to Lester, was to create a completed assignment to Lester of funds sufficient to satisfy its claim. It is further asserted that this established a fixed lien in favor of Lester and that, by failing to collect the money under the assignment or to file a mechanic's lien or a claim in the bankruptcy proceedings, Lester released its fixed lien and thus discharged the bond.

We do not overlook the principle of law that the release of collateral security by a creditor, without the consent of the surety, operates to discharge the surety. *Ward* v. *Bank of Pocahontas*, 167 Va. 169, 178, 179, 187 S. E. 491.

We have, however, in our decisions established the rule that, in the absence of agreement to use due diligence, mere inaction or passive negligence on the part of a creditor in failing to move against collateral security in satisfaction of the debt is not sufficient, in and of itself, to discharge a surety from his obligation. *Fidelity & Casualty Co.* v. *Lackland*, 175 Va. 178, 188, 189, 8 S. E. 2d 306; *Ward* v. *Bank of Pocahontas, supra,* 167 Va., at p. 178.

All that can be said against Lester is that it was guilty of inaction in failing to take those steps which might have brought payment of its claim from the principal or the bankrupt estate. More than this was necessary to release the obligation of Phoenix on the bond. Unless it appeared that Lester affirmatively released the alleged security, the obligation of Phoenix under its bond remained unimpaired. The record before us fails to disclose such affirmative release.

Lester could have proceeded to seek satisfaction of its claim as Phoenix now urges that it should have proceeded. But Lester was under no legal duty to do so. It was free to refrain from so proceeding and elect, instead, to look to the bond for payment.

"At law, the creditor rests under no obligation to look to the

principal or to his property, or to exhaust his remedies against him before resorting to the surety. . . . . ."

.    .    .    .    .    .    .    .    .

"It is likewise well settled that the failure of the creditor to file a proof of claim in bankruptcy against the debtor's estate does not release the surety." *Fidelity & Casualty Co.* v. *Lackland,* supra, 175 Va., at p. 187 & p. 189.

■ Moreover, there is no merit to the contention that Lester held a completed assignment and a fixed lien on the proceeds of the Veterans Administration loan. As has been pointed out, the agreement of July 9, 1957, attached an important condition to Michael's right to receive payment of the loan proceeds from Helsley, i. e., that evidence be furnished that no liens were outstanding or pending as of the date the payments to Michael were due. That condition was reflected directly upon Helsley's authority to honor Michael's direction to make the payments to Lester. Lester's right to demand payment of the funds was subject to the same condition.

At the time that Helsley held $1,000.00, which might have been applied to the Lester claim, the condition of the July 9 agreement was not met and for this reason Helsley refused to pay over the funds to Lester. Lester's right to receive its portion of the final loan payment would have been subject to the same condition, if the money had come into Helsley's hands.

Thus an element essential to the creation of an assignment was seriously lacking—the right of the assignee to demand and receive payment of the allegedly assigned funds. *Hicks* v. *Roanoke Brick Co.,* 94 Va. 741, 745, 746, 27 S. E. 596; *Clayton* v. *Fawcett's, Adm'rs,* 2 Leigh (29 Va.) 19, 23.

The judgment appealed from is supported by the law and the evidence. Accordingly, it will be

*Affirmed.*