**L. T. ZOBY, Sr., and Virginia M. Zoby, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 10322.**

United States Court of Appeals
Fourth Circuit.

Argued May 6, 1966.

Decided July 5, 1966.

---

T. Howard Spainhour, Norfolk, Va., for appellants.

J. Edward Shillingburg, Attorney, Department of Justice (Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson and Joseph Kovner, Attorneys, Department of Justice, and C. V. Spratley, Jr., U. S. Atty., and James A. Oast, Jr., Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

Appellant L. T. Zoby, Sr.[1] failed in his suit for refund of his 1960 Federal income taxes because of the District Court's adverse ruling upon the following question: whether as a contractor reporting on a cash receipts and disbursement basis, Zoby was entitled to deduct "as ordinary and necessary expenses"[2] the amounts expended by his surety in fulfilling his obligations under his contracts.

The taxpayer's contention was that these sums represented loans to him by the surety, for the repayment of which he is responsible, that the proceeds were applied to the payment of his "ordinary and necessary" business expenses, and

---

1. His wife joined in the tax return. She was also a plaintiff below and is now an appellant, but as he is the real party in interest, we refer to him alone as the taxpayer or appellant.

2. Internal Revenue Code of 1954, § 162, 26 U.S.C. § 162.

as such they were deductible by him in computing his income tax liability. As there was no other basis for his claim for refund, and the source and use of the moneys were conceded, the District Judge directed a verdict and judgment for the United States, the defendant, holding that, as a matter of law, the surety's payments did not constitute loans. We affirm.

Since 1958 Seaboard Surety Company had written surety bonds for Zoby to indemnify the owners or general contractors against losses through Zoby's failure to perform or complete his plumbing contracts with them. In the application for each bond, as well as by a general indemnity agreement, the taxpayer covenanted to reimburse the surety for all amounts which the latter should pay or become liable to pay by reason of its execution of any bond given by the taxpayer. In December 1961, while working on approximately 25 contracts, of which 17 were bonded by this surety, Zoby reported to Seaboard that he was unable to meet his payrolls, to satisfy his outstanding obligations and to continue in the execution of his contracts without financial assistance. Stating that he had been unable to secure this assistance from the banks, Zoby asked the surety to provide it.

In ascertaining his fiscal condition, Seaboard first examined the records of both his bonded and unbonded contracts. It then obtained from Zoby written confirmation that he was unable to perform his contracts or discharge his obligations. Zoby notified the holders of his contracts that all payments thereon should be made by checks payable to him but mailed to the surety. At the same time he gave the surety a power of attorney to endorse or otherwise negotiate instruments evidencing payments under the bonded contracts. On December 29, 1961 and during January and February 1962, Seaboard provided Zoby with funds to meet his payrolls, and in one instance to pay an overdue obligation to a subcontractor. The sums advanced for the payrolls amounted to $60,934.07. They were made to prevent Zoby's immediate collapse and thus protect the surety's interest while it was looking into his affairs. No distinction need be observed between the moneys supplied for payrolls on the bonded and unbonded contracts, as the taxpayer has stipulated that all funds so advanced may be treated as paid on account of bonded contracts.

On the basis of its investigation, Seaboard had by the middle of January 1962 rejected Zoby's request for financial aid. On all his contracts bonded by it, Seaboard notified the other parties of its election to discharge Zoby's impending obligations. This promise Seaboard fulfilled, while the taxpayer completed the unbonded jobs.

During 1962 the surety paid all debts which had been incurred by Zoby on bonded work prior to January 1, 1962. Further moneys were expended in 1962 to procure releases on three bonded contracts which Seaboard had elected not to assume, and to finish the work on the remaining uncompleted bonded contracts. In the same year, the surety received $1,468,455.65 in moneys due Zoby under the contracts. After applying these payments against the sums paid out on the contracts by the surety, expenditures exceeded receipts by $1,125,169.40. Taxpayer made no reimbursement whatever to the surety during 1962.

On his Federal tax return for 1962 Zoby reported as income the amounts so received by the surety under his contracts and deducted the amounts expended thereon by the surety. In this he was computing his net income under the cash receipts and disbursements method of accounting which he had regularly adopted. The result disclosed a net operating loss in 1962, and this he carried back to the tax year 1960.[3] Thus able to show a net operating loss for 1960, he claimed a refund from the Government of $4,-

---

3. Internal Revenue Code of 1954, § 172, 26 U.S.C. § 172.

027.23, the full amount he paid in 1960 as Federal income taxes. His claim refused by the Government, this action was instituted to recapture the 1960 payment.

 To succeed the plaintiff-appellant must, of course, establish that *he* had paid the expenses of compliance with his contracts. Concededly, as Zoby argues, a debt is still considered as paid by the debtor although the payment was in fact made by another, if the moneys used therefor were the proceeds of a loan to the debtor. See Crain v. Commissioner of Internal Revenue, 75 F.2d 962 (8 Cir. 1935).

 However, for the payment to represent a loan, the moneys must have been advanced to or for the debtor on his credit, that is in reliance on his promise to return it. But that was clearly not the nature of the advances here. They were not furnished on the strength of Zoby's faith and credit. Furthermore, all reasonable likelihood of repayment, the essence of a loan, was missing. Indeed, Seaboard had previously found Zoby to be an unacceptable risk and had declined to refinance him.

 Truth is the funds were not advanced as a matter of judgment or discretion of the surety; they were paid by the surety to answer its own direct obligations under the bonds. Upon default, a surety is primarily and immediately liable to the obligee for the performance of the contract. Phoenix Ins. Co. v. Lester Bros., Inc., 203 Va. 802, 127 S.E. 2d 432 (1962); Howell v. Commissioner of Internal Revenue, 69 F.2d 447 (8 Cir. 1934), cert. den. Howell v. Helvering, 292 U.S. 654, 54 S.Ct. 864, 78 L.Ed. 1503. Seaboard obviously could not have refused to make the expenditures because of its unwillingness to make a loan to Zoby. This conclusion is not altered by Zoby's covenants of reimbursement in the bond applications and in the general indemnity agreement. The stubborn

fact is that the surety met the completion or performance costs without reference to Zoby's separate and several liability therefor.

 Hence, Zoby is not warranted in seeking any benefit or advantage from these outlays when, admittedly, he had made no reimbursement to Seaboard in 1962. The Tax Court of the United States in Bush v. Commissioner, T.C. Memo 1964–16, Docket No. 4737–62, January 29, 1964, squarely blunted the point of Zoby's present claim. In like circumstances, the Court explicitly held that the payments by a surety on a contractor's bond were not loans to the contractor. Although, as here, the moneys went to pay expenses necessary to complete the taxpayer's contracts, they were disallowed as expenses *paid by the taxpayer*.[4]

The judgment of the District Court dismissing the action will be affirmed.

Affirmed.

---

4. It should be noted that our ruling does not foreclose the taxpayer from taking a deduction in future years for any payments he might make to satisfy his obligation to the surety. See Bush v. Commissioner, supra.