# CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia,
Department of Transportation

v.

Selective Insurance
Company of America

September 12, 2005

Case No. (Law) 31935

BY JUDGE JAMES H. CHAMBLIN

This case came before the Court on August 11, 2005, for trial without a jury. In this suit concerning a road construction project in Loudoun County, the Plaintiff, Commonwealth of Virginia, Department of Transportation, ("VDOT") seeks to recover on a performance bond on the project provided by the Defendant, Selective Insurance Company of America ("Selective").

After consideration of the evidence and the argument of counsel, judgment is awarded to VDOT against Selective in the amount of $56,954.50 with interest from the date of judgment.

*Facts*

On or about August 25, 2000, the Virginia Department of Transportation entered into a contract (Plaintiff's Exhibit 1) with New Construction, Inc. ("NCI") to perform work on a road project on Route 28 in Loudoun County with a total contract value of $1,105,200.80.

Selective Insurance Company of Virginia issued a performance bond (Plaintiff's Exhibit 2) on the Project dated August 7, 2000, in the amount

of $1,105,200.80. NCI performed the work on the Project under the Contract. Final acceptance of the work, as the term is defined in the Contract, occurred on or about December 3, 2001.

The Contract required the Project to be constructed in accordance with the Virginia Department of Transportation Metric Road and Bridge Specifications, dated January 1997. *See* Plaintiff's Exhibit 3. Under the Specifications, partial payments were to be made monthly to NCI on the basis of estimates of the quantities and value of the work performed. Such partial estimated payments were made. After the work was completed and accepted, VDOT rendered a final estimate, which determined that NCI owed liquidated damages of $79,800.00 and had been overpaid by $56,954.50.

NCI was given notice of the final estimate and advised that it had a sixty-day period in which to file a claim under Va. Code § 33.1-386. NCI filed a claim asserting that it did not owe the liquidated damages. NCI made no claim as to the over payment. During this administrative process, but before NCI could appear as it had requested before the Commonwealth Transportation Commissioner, VDOT and NCI reached a settlement.

The settlement is embodied in the Release of All Claims (Plaintiff's Exhibit 5) executed by NCI on February 4, 2003. Under the Release, NCI agreed to pay VDOT the sum of $56,954.50 (the overpayment) on or before April 1, 2003, in consideration of elimination of $79,800.00 *in* liquidated damages.

As required by Va. Code § 33.1-386 and § 2.2-514, the settlement must be approved by the Governor.

NCI did not pay on April 1, 2003.

On August 25, 2003, Governor Warner approved the settlement. Plaintiff's Exhibit 6.

On February 17, 2004, NCI filed a petition in bankruptcy in the United States District Court, Bankruptcy Division, for the Eastern District of Virginia. The bankruptcy proceeding is still pending.

VDOT first notified Selective of the overpayment and settlement on March 9, 2004. Plaintiff's Exhibit 7. VDOT demanded payment of the sum of $56,954.50 under the Performance Bond. Selective refused to pay.

VDOT filed its motion for judgment in the Circuit Court of the City of Richmond on April 28, 2004. The case was transferred to this Court by order entered June 21, 2004.

*Legal Analysis*

The Performance Bond executed by NCI and Selective specifically refers to the Contract in the following words: "the terms and conditions of said contract and his (NCI) obligations thereunder, including the Specifications, with amendments thereto . . . and such alterations as may be made in said plans and specifications as therein provided for. . . ."

Clearly, the Specifications are covered by the Performance Bond. The Specifications contain the provisions relating to estimated partial payments and a possible overpayment. The Specifications clearly impose an obligation on NCI to repay any finally determined overpayment.

The overpayment requirements, if they come into play, are a part of the contractual obligations imposed on NCI by the Contract and the Specifications. Repayment of any overpayment is just as much a contractual obligation of NCI under the Contract and the Specifications as is the performance of the road work. The Performance Bond references the Contract and the Specifications. Therefore, any required repayment of an overpayment is covered by the Performance Bond. I do not agree with Selective's argument that the Performance Bond only covers the road work to be performed under the Contract.

There is no doubt that NCI considers itself to be contractually obligated to repay the overpayment. It is merely seeking to discharge the obligation in bankruptcy. If NCI is obligated under the Contract and the Specifications to repay the overpayment, then Selective, as surety, is also liable unless something has occurred that results in a discharge.

Selective seems to argue that VDOT is attempting to collect under the Settlement Agreement, more specifically, the Release. I do not think so. I construe the motion for judgment and the argument of VDOT's counsel at trial to be that it is suing under the Contract and the Specifications. VDOT is not suing to collect under the settlement agreement or the Release. The Release merely releases VDOT for any claims that NCI may have against VDOT arising out of the project. The Release specifically recites that it is in consideration of the elimination of VDOT's liquidated damages claim of $79,800.00 resulting in a payment due of the outstanding balance owed by NCI to VDOT in the amount of $56,954.50. The Release does not refer to the $56,954.50 as a payment for a release; it refers to a balance already owed by NCI to VDOT. The Release acknowledges what NCI already owed to VDOT on account of the overpayment. I do not construe it as a settlement of the overpayment

claim. If anything, it is a settlement of the liquidated damage claim in a way favorable to NCI, and Selective cannot complain about that.

A surety may be discharged if there is a change in the obligation underlying the bond. An accommodation surety is discharged by any change in the obligation. However, a compensated surety must show a material alteration before it is discharged. *Board of Supervisors v. Southern Cross Coal*, 238 Va. 91, 94 (1989); *Southwood Builders, Inc. v. Peerless Ins.*, 235 Va. 164, 168-69 (1988). Selective, a compensated surety, argues that it is discharged because VDOT caused a material alteration in the underlying obligation.

Before considering whether Selective has been discharged, I must consider the argument of VDOT that the equitable doctrine of discharge cannot be used against the Commonwealth under the principle of sovereign immunity.

VDOT offers no authority that the discharge doctrine is not applicable to the Commonwealth. The Commonwealth cannot use sovereign immunity as a defense in an action based upon a valid contract entered into by a duly authorized agent of the Commonwealth. *Wiecking v. Allied Medical Supply Corp.*, 239 Va. 548, 551 (1990). The reasons for denying immunity are listed in *Wiecking* as follows:

> (1) When a state contracts for goods or services, receives the benefit of the contract, and then refuses to honor its obligations, then the contractor's property is subjected to an unconstitutional taking without just compensation;
>
> (2) Denial of liability would violate federal and state due process guarantees;
>
> (3) Giving the state the power to avoid its obligation would create an obvious contradiction in that neither the state nor the contractor can be bound, yet not bound, by a single contract;
>
> (4) Courts should not attribute to the legislature any intention to permit the government to exercise bad faith and shoddy dealing; and
>
> (5) It is a doubtful remedy to relegate the injured contractor to an appeal for justice to the legislature in the form of a private bill.

239 Va. at 551-52.

A surety is bound upon the obligation just the same as the principal. A surety can take advantage of all the principal's defenses. If the owner (obligee) and the principal materially alter the terms of their agreement without the consent of the compensated surety, then such surety is discharged. If VDOT were allowed to materially alter the underlying obligation without Selective's consent and without causing a discharge of Selective, then I think it would result in an unconstitutional taking of Selective's property without just compensation, a denial of due process, bad faith or shoddy dealing by VDOT, and leaving Selective with the doubtful remedy of petitioning the General Assembly for private relief.

Further, if sovereign immunity precludes application of the discharge doctrine, then VDOT could change the obligation with impunity and the surety would never be discharged. It would be unfair. No bonding company in its right mind would agree to such an arrangement. Also, there is no provision in the bond whereby Selective waives any discharge defense or agrees that it cannot be used against the Commonwealth.

I do not think sovereign immunity precludes or prevents the doctrine of discharge from being used against the Commonwealth under the facts of this case.

Selective argues that it has been discharged as surety because of a material alteration of the Contract and the Specifications by VDOT. I do not agree.

First, Selective argues that the failure of VDOT to notify it of the overpayment and the Settlement Agreement until March 9, 2004, is a material alteration causing a discharge. Selective points out that the delay in notifying it allowed NCI to seek bankruptcy protection before Selective could do something to be in a better position to go against NCI if Selective had to pay under the bond.

Prejudice is not an element of discharge in Virginia. *Southwood Builders* makes it clear that a separate showing of prejudice to a compensated surety is not necessary because a material alteration, in itself, establishes sufficient prejudice. 235 Va. at 170.

There is no duty upon VDOT to notify Selective of anything except maybe the demand for payment. VDOT is not a party to the Performance Bond. There is no provision in the Contract or Specifications requiring VDOT to notify Selective. There is no statutory duty upon VDOT to notify Selective. There is no general duty on the part of the owner to notify the surety of the contractor's default unless there is a contractual provision requiring it. *See Insurance Co. v. Lester Brothers*, 203 Va. 802, 807-08 (1962).

Under the Performance Bond, both NCI and Selective are "jointly and severally" bound. Selective is obligated to perform if NCI does not. Selective's obligation is primary and unconditional. Under these circumstances, it would be incumbent on Selective to make itself aware of what NCI was or was not doing as to the bonded Project under the Contract and Specifications.

Any delay in finally advising Selective of its liability under the Performance Bond cannot under the circumstances of this case be deemed a material alteration. I think the primary and unconditional obligation of Selective along with NCI under the Performance Bond at least gives rise to a duty on the part of Selective to inquire as to the status of the Project and NCI's performance.

Even though Selective may have tried to show it, I cannot find from the evidence presented by Selective that there is some sort of custom in the business of road work performance bonding that requires an owner such as the Commonwealth to notify the surety of the course of the work or any default in the work.

I do not accept that Selective has a defense because VDOT did not withhold funds from its partial payments to NCI. The retainage provisions of the Stipulations were removed from the Contract. See pages 61 and 62 of the Contract (Plaintiff's Exhibit 1).

Selective argues that it is discharged because VDOT delayed requiring NCI to repay the overpayment from December 2001 to April 2003. The delay is not an alteration of the Contract. It was merely a foreseeable handling of a claim arising out of the Contract. The Contract and the Specifications clearly provide a procedure for such claims. The administrative claims procedure of Va. Code § 33.1-386 for highway construction contracts was available to NCI. Nothing in the Contract or the Specifications deprived NCI of its rights under Va. Code § 33.1-386.

There is no need to go into the events after the final estimate was made by VDOT and provided to NCI. All the things that occurred were contemplated by and within the terms and conditions of the Contract and the Specifications and Va. Code § 33.1-386. The settlement did not alter the Contract. By the time the Settlement was finally approved as required by law by the Governor, the time for NCI to pay had passed. I feel that way because what occurred after the final estimate was foreseeable and followed logically from the Contract and the Specifications.

The Release did not release NCI from anything it was required to do under the Contract. The Release settled the claim of NCI that it did not

owe liquidated damages. It lessened what VDOT had determined that NCI owed. Selective cannot complain about that.

There was no alteration of the Contract. What occurred after the final audit was a process contemplated by statute and contract to determine the final obligations of NCI. VDOT and NCI did not alter the Contract or the Specifications as to a payment date. It all came about by NCI exercising the rights it had contractually and statutorily and by VDOT exercising in turn the rights it had contractually and statutorily. VDOT sued to collect under the Contract and the Specifications as originally written, and not under any alteration, be it a settlement or otherwise, occurring afterwards.

If the Release is considered a settlement agreement and a material alteration, then I do not see how Selective can complain because the settlement reduced what VDOT initially said it was owed. Selective has not shown that NCI had any other claim against VDOT that might have been released by the Release to Selective's detriment. Further, Selective offered no evidence that VDOT had erroneously calculated the overpayment. In fact, NCI did not contest the overpayment. Matters became protracted when NCI asserted its claim, as it had a right to, that it did not owe liquidated damages. And NCI ultimately prevailed on that issue.