# CIRCUIT COURT OF FAIRFAX COUNTY

Columbia Realty
Venture, L.L.C.

   v.

Dong Dang et al.

August 16, 2011

Case No. CL-2010-12427

BY JUDGE LORRAINE NORDLUND

This matter came before the Court for trial on April 26 and 27, 2011. The Court took the Defendant Hao Dang's Motion to Strike under advisement and submitted the matter to the jury. The jury came back with a verdict against all defendants, including Mrs. Dang. The Court requested supplemental briefs from the parties and set a hearing for June 30, 2011. On June 30, 2011, the parties came before the Court and made their arguments but were unprepared for some of the questions the Court raised. The Court again asked for supplemental briefs and took the matter under advisement. For the following reasons, the Court grants Mrs. Dang's Motion to Strike and dismisses the Plaintiff's claims against her.

*Facts*

The evidence at trial indicated that Defendants Dong Dang and his wife, Hao Dang, attended a settlement with Columbia Realty, L.L.C. ("Columbia"), for Mr. Dang to execute a commercial lease agreement, in Mr. Dang's sole name, for a nail salon in the District of Columbia. The evidence further established that, at no time, either prior to, during, or after the settlement, was Mrs. Dang ever consulted or advised as to terms of

either the lease agreement or the document entitled "Guaranty." Moreover, she was never given any opportunity to negotiate any of those terms.

Rather, the evidence established that, during the course of the settlement, Mrs. Dang was simply handed the "Guaranty" and told that she had to sign the document or her husband would not be able to obtain the lease. The evidence further established that, while both Mr. Dang and Columbia's representative(s) urged Mrs. Dang to sign the "Guaranty," no explanation was given as to the document's contents nor an explanation as to the terms of the underlying commercial lease, and, at no time, was she advised that she was signing a document which made her individually liable to a greater degree than Mr. Dang would be on the commercial lease.

Mrs. Dang testified that she was unsure of what she was signing but signed the document anyway so her husband could obtain the lease, as she had been advised that the settlement would not go forward unless she did so. No party presented any evidence to the contrary.

During the trial, Mrs. Dang raised concerns about the validity of the "Guaranty" due to its failure to name the property involved and the person whose obligation it required Mrs. Dang to guarantee. At the conclusion of the evidence, Mrs. Dang moved to strike the claims against her based on her contention that the "Guaranty" was invalid and unenforceable against her. The Court took the matter under advisement and submitted the case to the jury. As noted above, the jury found all three defendants liable to Columbia, including Mrs. Dang.

### Standard of Review

On a motion to strike, a trial court "is required to accept as true all evidence favorable to a plaintiff and any reasonable inferences that may be drawn from such evidence." *James v. City of Falls Church*, 280 Va. 31, 38, 694 S.E.2d 568 (2010) (*citing Austin v. Shoney's, Inc.*, 254 Va. 134, 138, 486 S.E.2d 285 (1997)). "The trial court is not to judge the weight and credibility of the evidence and may not reject any inference from the evidence favorable to the plaintiff unless it would defy logic and common sense." *Austin*, 254 Va. at 138; see also *Meador v. Lawson*, 214 Va. 759, 761, 204 S.E.2d 285 (1974).

Mrs. Dang has raised the issue of validity, and despite arguments to the contrary, the Court finds that it has jurisdiction to examine the contract for unconscionability as part and parcel of its validity determination. See *Rogers v. Yourshaw*, 18 Va. App. 816, 822, 448 S.E.2d 884 (1994).

A party claiming that a contract is unenforceable because it is unconscionable bears the burden of proving that unconscionability by clear and convincing evidence. *Id.*

*The "Guaranty"*

A guaranty is a collateral undertaking by one person to be answerable for the payment of some debt or the performance of some duty for another person if that person defaults on his payment or performance. *Patterson v. Shaver*, 165 Va. 298, 301, 182 S.E. 261 (1935). A guaranty must be in writing and supported by adequate consideration. *Id.* The law deems a guaranty absolute unless its terms import some condition precedent to the liability of the guarantor. *Ives v. Williams*, 143 Va. 855, 860, 129 S.E. 675 (1925). If a guaranty is conditional, however, the creditor must satisfy those conditions before proceeding against the guarantor. *See id.* at 861. In Virginia, the distinction between guaranty and suretyship is that guaranty is a secondary obligation while suretyship is a primary one. *Phoenix Ins. Co. v. Lester Bros., Inc.*, 203 Va. 802, 807, 127 S.E.2d 432 (1962). In *Phoenix*, the Supreme Court of Virginia elaborated on this distinction, stating:

> The contract of the guarantor is his own separate undertaking, in which the principal does not join. The guarantor contracts to pay, if, by the use of due diligence, the debt cannot be made out of the principal debtor, while the surety undertakes directly for the payment, and so is responsible at once if the principal debtor makes default; or, in other words, guaranty is an undertaking that the debtor shall pay; suretyship, that the debt shall be paid.

*Id. quoting Piedmont Guano & Manuf'g Co. v. Morris*, 86 Va. 941, 944-45, 11 S.E. 883 (1890). The document at issue in this case states in pertinent part:

> Guarantors further covenant that (1) the liability of the Guarantors is primary, shall not be subject to deduction for any claim of offset, counterclaim, or defense which Tenant or Guarantors may have against Landlord, and Landlord may proceed against Guarantors separately or jointly, before, after, or simultaneously with any proceeding against Tenant for default . . . (4) this Guaranty shall be absolute and unconditional. . . .

Even Columbia's counsel had to acknowledge, during the June 30, 2011, hearing, that the "Guaranty" in this case did indeed operate as a suretyship and not a guaranty, making Mrs. Dang primarily obligated to Columbia should the current tenant default on his contractual duties to Columbia. Consistent with the above stated principles, the Court finds that Mrs. Dang signed what amounts to a primary obligation and an absolute guaranty, which is therefore a suretyship, not a guaranty.

### The "Guaranty" as a Suretyship Contract

When construing a suretyship contract, the Court must apply the same rules as it would to the construction of any other contract, the relevant inquiry being: "What was the intention of the parties as disclosed by the instrument in the light of the surrounding circumstances?" *Kirschbaum v. Blair*, 98 Va. 35, 40, 34 S.E. 895 (1900). Virginia law has several well settled principles regarding the liability of sureties. At its most basic level, a surety's liability to the creditor is the same as that of the principal. *Grizzle v. Fletcher*, 127 Va. 663, 666, 105 S.E. 457 (1920). Accordingly, the creditor's right of recovery against the surety does not extend beyond that against the principal, nor will a surety be liable where the creditor could not assert that liability against the principal. *Ranger Constr. Co. v. Prince William County School Bd.*, 605 F.2d 1298 (4th Cir. 1979). Moreover, a creditor must demonstrate that he has performed his obligations under the contract before he can recover against the debtor's surety. *American Sur. Co. v. Plank*, 159 Va. 1, 17, 165 S.E. 660 (1932). *If the creditor demonstrates a prima facie case for liability against the principal, the surety may assert the same defenses as the principal because the surety and principal are in privity. Board of Supvrs. v. Southern Cross Coal Corp.*, 238 Va. 91, 96, 380 S.E.2d 636 (1989) (emphasis added).

A surety who receives no payment for his contract is a favored debtor under Virginia law because she receives no benefit for her obligation. *Kirschbaum*, 98 Va. at 40. In this case, the "Guaranty" contains no explicit statement about consideration, nor could the Court reasonably imply one from its terms. Therefore, Mrs. Dang is a gratuitous surety.

In *Southern Cross Coal Corp.*, the Supreme Court described the obligation of a gratuitous, or accommodation surety, as follows: "Accommodation sureties are entitled to the benefit of the *strictissimi juris* rule they are discharged by any change in the obligation. . . ." 238 Va. at 94. *Strictissimi juris* is usually defined as: "most strictly according to the law." Bryan A. Garner, *A Dictionary of Modern Legal Usage*. 836 (2d ed. 1995). Additionally, if a creditor and a principal debtor make a positive contract to extend the time of the debtor's obligation without the surety's consent, the surety is thereby discharged. *Hofheimer v. Booker*, 164 Va. 358, 364, 180 S.E. 145 (1935).

Despite these well settled principles, the "Guaranty" in this case requires Mrs. Dang to forfeit multiple rights she otherwise would have as a gratuitous surety. Specifically, the Guarantor covenants that:

> (1) The liability of the Guarantors [sic] is primary, *shall not be subject to deduction for any claim of offset, counterclaim, or defense which Tenant . . . may have against Landlord*;

(2) This Guaranty shall not be terminated or impaired in any manner whatsoever by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of such Lease, by reason of summary or other proceedings against Tenant . . . *or by reason of any extension of time or indulgence granted by Landlord to Tenant or any other defense available to guarantors or sureties.* . . .

(4) This Guaranty shall be absolute and unconditional and shall remain and *continue in full force and effect as to any renewal, extension, amendment, additions, assignments, sublease, transfer, or other modification of the Lease, whether or not currently expressed in the Lease and whether or not the Guarantors have notice thereof.* . . .

(Emphasis added.) These sections of the "Guaranty" stand in direct opposition to Mrs. Dang's rights to bring any defenses that her husband might have against the Landlord, be discharged because of an extension of time or modification of the underlying obligation without her notice, and "any other defense available to guarantors or sureties." Because the "Guaranty" essentially requires Mrs. Dang to give up all rights she would normally be entitled to under Virginia law, the Court finds it necessary to determine whether this forfeiture makes the "Guaranty" unconscionable and unenforceable against Mrs. Dang.

Virginia law sets a high burden for declaring a contract unconscionable.

> While the jurisdiction undoubtedly exists in the courts to avoid a contract on the ground that it makes an unconscionable bargain, nevertheless an inequitable and unconscionable bargain has been defined to be "one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other." The inequality must be so gross as to shock the conscience.

*Smyth Bros.-McCleary-McClellan Co. v. Beresford*, 128 Va. 137, 170, 104 S.E. 371 (1920). In addition, "unconscionability deals primarily with a grossly unequal bargaining power at the time the contract is formed. . . ." *Envirotech Corp. v. Halco Engineering, Inc.*, 234 Va. 583, 593, 364 S.E.2d 215 (1988).

Applying the law to the evidence from the trial in this case, it appears that a corporate party told an individual that she needed to sign the Guaranty or her husband would not be allowed to lease the property. The evidence from trial therefore indicates that no bargaining over the terms of the "Guaranty" took place. Even Columbia admits that Mr. Dang simply

instructed Mrs. Dang to sign the "Guaranty" so that Columbia would lease him the property, without offering her the opportunity to discuss or negotiate the terms of either document.

Looking then to the substance of the "Guaranty," it appears to convert Mrs. Dang from a guarantor, with a conditional and secondary obligation, to a gratuitous surety with a primary obligation. In addition, the terms of the "Guaranty" then attempt to take away many of the rights Mrs. Dang would otherwise have as a gratuitous surety under Virginia law. Even putting many of them aside, Mrs. Dang's signature on the "Guaranty" made her primarily liable for the obligation of the Tenant, regardless of whether the Tenant continued to be her husband or not, and regardless of how much Columbia and the Tenant decided to change the underlying obligation, all without ever notifying Mrs. Dang. Additionally, despite any modifications to that underlying obligation, Mrs. Dang would be liable and utterly defenseless in a trial for the collection of that obligation and could potentially be forced to pay Columbia more than a Tenant owed.

Columbia has argued that the Court should not find the "Guaranty" unconscionable because it chose not to enforce the more problematic terms against Mrs. Dang during the trial of this case. Specifically, Columbia notes that it allowed Mrs. Dang to present defenses at trial, including defenses available to the Tenant. But it is well settled in this Commonwealth that, when the terms of a contract are clear and unambiguous, as they are here, the contract needs no interpretation, and the intention of the parties must be determined only from the terms themselves. *Sully Station II Cmty. Ass'n v. Dye*, 259 Va. 282, 284, 525 S.E.2d 555 (2000), *citing Carter v. Carter*, 202 Va. 892, 896, 121 S.E.2d 482 (1961). The Court finds the terms of the "Guaranty" in this case clear and unambiguous. Therefore, the Court cannot and will not interpret the "Guaranty" based upon Columbia's representation that it did not enforce certain terms at the trial and perhaps never intended to enforce them.

The Court further finds that Mrs. Dang was given no opportunity to review or understand the "Guaranty" or to negotiate over its terms and thereby had unequal bargaining power with Columbia at the time of her signature. Additionally, the Court finds that Mrs. Dang was a gratuitous surety, as she primarily obligated herself to Columbia under the Lease, for no consideration and therefore is a favored debtor. In addition, despite that the laws governing suretyships allow a surety to assert the same defenses as the principal, the "Guaranty" purports to waive and deny Mrs. Dang the right to assert any rights or defenses the Tenant would have under the Lease, including any right of setoff, regardless of how severely Columbia and the Tenant may have modified the Lease from its form at the time of her signature. Most importantly, by definition, a surety is only liable for the underlying obligation of the primary debtor, and, by waiving Mrs. Dang's

right to assert the same defenses as the Tenant, the "Guaranty" opens her up to be potentially liable for more than the underlying obligation.

For the reasons stated herein, the Court concludes that the circumstances surrounding Mrs. Dang's execution of the "Guaranty," combined with the terms of the "Guaranty" itself, constitute an inequality "so gross as to shock the conscience." *Beresford*, 128 Va. at 170. Accordingly, the Court finds that the "Guaranty" is unconscionable and unenforceable against Mrs. Dang and hereby grants her Motion to Strike the claims against her.